*37 OPINION OF THE COURT
Simons, J.
Plaintiff Charles Tango, individually and as guardian of his two minor daughters, Renee and Ruth Tango, seeks money damages from defendant Jennie Tulevech, a probation officer, and her employer, defendant County of Rockland, alleging that they wrongfully, carelessly and negligently violated plaintiffs’ civil and constitutional rights by depriving Mr. Tango of the custody of his two children. The claims are founded upon an incident which occurred October 31, 1977 in the office of defendant county’s Probation Department when defendant Tulevech permitted Barbara Childs, plaintiff Charles Tango’s former wife and the children’s mother, to take the children with her to South Carolina over his objection and contrary to a custody agreement between the father and mother. Plaintiffs claim that Ms. Childs abused the girls, causing physical injuries to them and emotional injuries to all plaintiffs. After a jury trial, the father recovered a verdict of $10,000 and each daughter recovered a verdict of $20,000. On appeal the Appellate Division reversed and dismissed the complaint. We affirm its order.
When Charles Tango and Barbara Childs were divorced in New Jersey in 1974, the judgment awarded Ms. Childs permanent custody of their daughters. With the aid of the Union County (New Jersey) Probation Service, the parents modified the custody arrangement in February, 1977 by a letter agreement which accorded the father exclusive custody of the children for a period of one year. The children, approximately 8 and 10 years old at the time, were to reside with their father in Rockland County and Ms. Childs was given the right to visit them at least once a month. At the time of this modification, Ms. Childs had a support proceeding pending in the Union County Juvenile and Domestic Relations Court. In dismissing the proceeding, the court noted in its order that the Probation Department had a letter in its possession signed by Ms. Childs which referred to this agreement and that the father was excused from making support payments during the time he had custody.
*38 Shortly thereafter, plaintiff commenced a proceeding in the Supreme Court, Rockland County, seeking permanent custody of the children. At about the same time, Robin Alvarez, a 19-year-old daughter of the Tango-Childs marriage, instituted a separate proceeding in Family Court, Rockland County, seeking an order granting her visitation rights with her younger sisters.
On October 31, 1977 Barbara Childs and Robin Alvarez went to the school attended by Renee and Ruth Tango, removed them from their school bus and drove away with them. The school principal observed the incident and provided identification which enabled the police to intercept the car and take its occupants to the In-take Unit of the Probation Department connected with the Rockland County Family Court where they met defendant Tulevech.
The evidence of what transpired next is conflicting. Defendants claim that Ms. Tulevech acted as a mediator in the dispute; plaintiffs’ claim that she frustrated their efforts to prevent Ms. Childs from unlawfully taking the children to South Carolina. In support of her claim, defendant Tulevech testified that she was informed by Childs that she was entitled to custody and that she intended to take the children to South Carolina. As evidence of the lawfulness of her conduct, the mother showed defendant Tulevech several papers, including the divorce decree awarding her custody of the children, and the letter agreement with the father giving him temporary custody rights for one year. Defendant testified that the letter was not notarized. Defendant examined the children and concluded that they “looked well” and were free of any signs of physical abuse. The father and a law student employed by his attorney claim that when they arrived at the Probation Office shortly thereafter they told Tulevech of the pending Supreme Court custody proceeding as well as the prior support proceeding in New Jersey which was dismissed with Ms. Childs’ consent. Mr. Tango contends, and defendant Tulevech denies, that he repeatedly told her that Childs had physically abused the children. Plaintiffs’ witnesses also testified that defendant Tulevech refused to allow the father to confer with her supervisor or a Judge. Instead, she is alleged to have told him that all the Judges *39 were “too busy” and then ordered a policeman to escort Ms. Childs and the children out of the building.
Plaintiff Tango eventually regained custody of the children in June, 1978 by an order of a South Carolina court.
The complaint contains causes of action alleging that (1) defendant Tulevech negligently performed her official duties, and that because she did so out of malice she lost any immunity she might otherwise enjoy, (2) defendants’ interference with plaintiffs’ custodial rights violated their civil and constitutional rights under section 1983 of title 42 of the United States Code, and (3) defendants breached a special duty owing to plaintiffs. The trial court refused to submit the civil rights claim to the jury but did instruct it on the remaining theories with the explicit instruction that defendants could be found negligent only if the jury also found that defendant Tulevech had acted in bad faith. The jury returned verdicts for each of the plaintiffs and on appeal the Appellate Division reversed, concluding that under no view of the evidence could defendants be held liable. It found that defendant Tulevech acted within the scope of her duties in refusing to restrain Ms. Childs from removing the children and that liability could not be predicated on the decision to so proceed, even if it was erroneous or actuated by bad faith or malice (citing Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831). The Appellate Division made a factual finding contrary to the jury’s to the effect that defendant Tulevech had indeed acted in good faith. It did not discuss plaintiffs’ civil rights claim.
I
Plaintiffs’ first claim is that defendant Tulevech negligently performed her duties, that she should have referred the matter to a Family Court Judge and that the jury’s finding of bad faith strips her of any official immunity she might otherwise enjoy. Recognizing that current New York law renders Tulevech’s motives irrelevant (see Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831, supra), plaintiff argues in the alternative for a change in the law which would permit a showing of bad faith or malice to negate the public official’s immunity.
*40 Municipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago (see Bernardine v City of New York, 294 NY 361), but other recognized limitations still govern the tort liability of municipal officers. Relevant here is the rule that when official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice. Conversely, when the action is exclusively ministerial, the officer will be liable if it is otherwise tortious and not justifiable pursuant to statutory command (East Riv. GasLight Co. v Donnelly, 93 NY 557, 559, cited in Rottkamp v Young, supra; see, generally, 2 Harper and James, Torts, . § 29.10). In Rottkamp the Appellate Division held that a building inspector who refused to issue a building permit was immune from suit because his act was discretionary (21 AD2d, at p 376). Marking the distinction between discretionary and ministerial acts, the court noted that: “[e]ach case must be decided on the circumstances involved, the nature of the duty, the degree of responsibility resting on the officer, and his position in the municipality’s table of organization. It must still be true that discretion is indicated if the powers are ‘to be executed or withheld according to his own view of what is necessary and proper’ (Mills v. City of Brooklyn, 32 N. Y. 489, 497; cf. People v. Kuder, 93 Cal. App. 42, 54-55).”
Judicial efforts to distinguish between discretionary and ministerial acts have produced an array of decisions with results that are difficult to harmonize (see, e.g., Charles O. Desch, Inc. v State of New York, 60 AD2d 678, affd 45 NY2d 882 [issuance of burning permits held to be discretionary act]; Burgundy Basin Inn v State of New York, 47 AD2d 692, mot for lv to app den 37 NY2d 706 [issuance of concert permits held to be discretionary act]; Van Buskirk v Bleiler, 46 AD2d 707 [wrongful discharge of civil service employee held to be judicial or quasi-judicial act]; Gross v State of New York, 33 AD2d 868 [filing of certificate of incorporation by Secretary of State’s employees held to be a quasi-judicial act calling for discretion]; but see McCrink v City of New York, 296 NY 99 [failure to terminate employment of alcoholic and dangerous police *41 officer held ministerial omission]; Waterman v State of New York, 35 Misc 2d 954, mod 19 AD2d 264, affd sub nom. Williams v State of New York, 14 NY2d 793 [duties of court stenographer held to be ministerial act]; Puffer v City of Binghamton, 59 Misc 2d 856 [issuance of a marriage license held to be a ministerial act]; Luckie v Goddard, 171 Misc 774 [duty of Judge to certify record held to be ministerial act]). As Prosser has noted, almost any act admits some discretion in the manner of performance, even driving a nail (see Prosser, Torts [4th ed], § 132, p 990). Nevertheless, the rule to be derived from the cases is that discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. Applying that standard, defendant Tulevech acted in a discretionary capacity when she refused to detain the children and take them before a Judge and therefore defendants are immune from common-law liability.
Defendant Tulevech was the supervisor of the In-take Unit of the Probation Department, which served Family Court. The duties of department personnel included interviewing clients and determining whether or not there was any possibility of adjusting the matters or grievances they presented, whether there was information or assistance that could be given verbally to the prospective client, whether the client possessed a legal cause of action, and whether Family Court would have jurisdiction of the matter if the petition was warranted.
When confronted with the Tango-Childs dispute, defendant Tulevech conferred with the parents and the children, she inspected the documents presented and examined the children for signs of abuse, and she necessarily exercised judgment as to whether the court action was appropriate. Arguably, she was entirely correct in the present circumstances when she recognized the judgment which expressly awarded the mother permanent custody of the girls rather than the equivocal, unnotarized letter of modification. But even if her ultimate determination was incorrect, she is immune from suit because she acted within the scope of her *42 discretionary authority as supervisor of the In-take Department (cf. Teddy’s Drive In v Cohen, 47 NY2d 79). Inasmuch as she was exercising her judgment in determining the proper conduct of her office and given the discretionary nature of her acts, the question of bad faith or malice becomes irrelevant under the rule stated in Rottkamp. Although New York is in a minority position in so holding (see Rottkamp v Young, 15 NY2d 831, 833, supra [Burke, J,, dissenting]), we find no reason to reconsider the rule of that case on this record (see, generally, 2 Harper and James, Torts, § 29.10).
II
Plaintiffs also claim that the trial court erred in dismissing the claim against defendant Tulevech based upon section 1983 of title 42 of the United States Code. The Appellate Division did not expressly address the issue but apparently it agreed with the trial court, affirming its determination sub silentio. We agree that plaintiffs failed to establish a prima facie case under the Federal statute.
In an action brought under section 1983 of title 42 of the United States Code against a public official, such as defendant here, who is arguably entitled to a qualified immunity under Federal law, plaintiff must establish: (1) that some person deprived him of a Federal right, and (2) that such person acted under color of State or territorial law (US Code, tit 42, § 1983; Gomez v Toledo, 446 US 635; see, generally, 2 NY PJI, Cum Supp [Oct., 1983], pp 201-205). Plaintiff need not plead or prove bad faith; it is for the defendant to establish immunity by evidence of good faith (see Gomez v Toledo, supra, at pp 635-636).
A parent’s interest in maintaining custody and care of his or her children has been given constitutional recognition (Stanley v Illinois, 405 US 645) as has the child’s interest in the care provided by the family relationship (see Drollinger v Milligan, 552 F2d 1220, 1225-1226). Both the parent and the child may assert a claim under the statute if deprived of those rights under color of law. However, before plaintiff Tango may prevail on a claim that he has a constitutional interest in the custody of his two infant children, or before his children may prevail on an analogous claim, the custodial right must be clearly established *43 at the time of the alleged deprivation (Procunier v Navarette, 434 US 555, 562-563). Here, at the time the children left the Probation Department with Ms. Childs in October, 1977, the right to lawful custody was debatable — Tango could point only to an equivocal letter agreement to support his claim of custody — whereas his former wife held an award of custody from a court of competent jurisdiction. Although plaintiff’s claim to custody of the children ultimately prevailed in the New York action, it was not clearly established on October 31,1977 and the cause of action was properly dismissed.
Ill
We have considered plaintiff’s remaining claims and have found them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
Order affirmed, with costs.