WILLIAM J. BARNES, as Administrator of the Estate of JOHN OUTLAW, JR., Deceased, Respondent, v COUNTY OF NASSAU et al., Appellants, et al., Defendant.

Second Department, April 15, 1985

### APPEARANCES OF COUNSEL

*Edward G. McCabe, County Attorney (Kathryn Driscoll Hopkins* and *William S. Norden* of counsel), for appellants.

*Solerwitz, Solerwitz & Leeds (Sari M. Friedman, James O'Shea* and *Judith A. Kravitz* of counsel), for respondent.

## OPINION OF THE COURT

O'Connor, J. P.

■ Should a county be permitted to amend its answer to interpose a defense of immunity against a claim of negligent placement and supervision of an infant in foster care? For the reasons stated below, we answer this question in the negative and thus affirm Special Term which denied the county defendants' motion for leave to amend and for summary judgment.

### I

In July 1977, defendant Department of Social Services of the County of Nassau (hereinafter DSS) placed a four-year-old child and his sister in the foster home of defendant Margaret Toomer after the infant's natural mother was sentenced to prison. Subsequent to placement, the DSS received several reports that the infant was being "beaten" and otherwise "abused" by the foster mother. DSS employees allegedly investigated the complaints and determined that the child should remain in Mrs. Toomer's care pending completion of their investigation. On May 28, 1978, five days after a final home visit by employees, the infant was beaten to death. Mrs. Toomer was subsequently charged and convicted of criminally negligent homicide in connection with the death.

On or about November 17, 1978, William Barnes, the decedent's grandfather and administrator of his estate, commenced the present action against the County of Nassau, the DSS and Mrs. Toomer. The cause of action against the county defendants asserted, in effect, that they were negligent in placing the infant in Mrs. Toomer's care, investigating the complaints of abuse against her, and failing to remove the infant from her care. Initially, the county defendants denied these allegations, and then, on April 30, 1984, some five years after the service of the answer, moved for leave to amend their answer to interpose the affirmative defense of immunity and for summary judgment dismissing the complaint insofar as it was asserted against them.

In a short form order, Special Term denied the county defendants' motion on the ground that "no purpose would be served by allowing defendant[s] to amend [their] answer" since the acts here complained of "require[d] no discretion" and the "County is not immune from liability". While we agree with Special Term's determination, we believe additional explanation is necessary.

## II

■ The law is clear that leave to amend a pleading should be freely granted unless the amendment sought is palpably improper or insufficient as a matter of law or unless prejudice or surprise directly results from delay in seeking such amendment (CPLR 3025 [b]; *Norman v Ferrara,* 107 AD2d 739; *Kitchner v Kitchner,* 100 AD2d 954; *Goldstein v Brogan Cadillac Oldsmobile Corp.,* 90 AD2d 512). At the outset, plaintiff argued at nisi prius and renews the argument before this court, that leave to amend should be denied because of the county defendants' five-year delay in seeking amendment. Special Term correctly rejected this argument *sub silentio* as failing to demonstrate sufficient legal prejudice for CPLR 3025 purposes. Clearly, neither the fact that a motion is made on the eve of trial nor the fact that the matter to be asserted by amendment may defeat the opposing party's cause of action is, in and of itself, a sufficient ground for denying leave to amend (*see, Kule Resources v Reliance Group,* 49 NY2d 587; *Horwitz v Nagamatsu,* 103 AD2d 736; *Kitchner v Kitchner, supra*). The issue before us thus narrows to whether the county defendants' proposed amendment was palpably improper or legally insufficient.

## III

In *Bartels v County of Westchester* (76 AD2d 517), the infant plaintiff was severely injured as a result of the unfitness and/or carelessness of her foster parents in attempting to bathe her in scalding water. In the ensuing action, she alleged, through her guardian ad litem, that the county defendants were liable for the injuries sustained at the hands of her foster parents after being placed on notice of their incompetence or indifference. Shortly before the case was reached for trial, the county defendants moved to dismiss the action as to them on the ground, *inter alia,* that they were immune from liability because the care of children placed with foster parents was a governmental activity calling for day-to-day decisions of a highly sensitive discretionary character which could not be subject to judicial scrutiny (*Bartels v County of Westchester, supra,* p 520). This court, in an opinion by Justice Hopkins, sustained the complaint, noting that a county was no longer immune from liability for acts not involving the exercise of discretion and plaintiff's claims did not involve quasi-judicial acts (*Bartels v County of Westchester, supra,* p 523).

Although *Bartels* (*supra*) was before us on a motion to dismiss the complaint, not on a motion to amend the answer, we believe

the case is factually and procedurally indistinguishable from the one at bar, and the principle enunciated therein, namely, that a claim of immunity will not bar inquiry into a county's allegedly negligent placement and supervision of an infant in foster care, should be applicable here. Implicitly conceding the similarity of the two cases, however, the county defendants argue that *Bartels* (*supra*) "is not controlling" since more recent cases, notably *Tango v Tulevech* (61 NY2d 34), "have adopted the view that county social service workers are indeed called upon to exercise discretion on crucial points in cases of suspected child abuse or neglect" and are thus immune from liability. Indeed, defendants contended at nisi prius that to the extent *Bartels* (*supra*), is inconsistent with the Court of Appeals decision in *Tango* (*supra*), it "must be considered to be overruled". We do not read these two cases as inconsistent with each other.

## IV

In *Tango v Tulevech* (*supra,* p 41), the Court of Appeals, noting that virtually every act admits some discretion in the manner of performance, nevertheless drew a fine line between discretionary or quasi-judicial acts which are cloaked with immunity, involving as they do "the exercise of reasoned judgment which could typically produce different acceptable results," and ministerial acts which are not, since they "envision * * * direct adherence to a governing rule or standard with a compulsory result" (*see also, Sinhogar v Parry,* 74 AD2d 204, *mod on other grounds* 53 NY2d 424). Applying that standard, the court ruled that a supervisor of the in-take unit of a county probation department which served the Family Court, acted within the scope of her discretionary authority and thus with immunity when she permitted a mother, over the father's objection, to take their children with her to South Carolina without first taking them before a Family Court Judge. In reaching this decision, the Court of Appeals specifically pointed out that the duties of the department personnel entailed, *inter alia,* interviewing clients and determining whether or not there was any possibility of adjusting the grievances they presented, whether the clients possessed a legal cause of action, and whether the Family Court would have jurisdiction of the matter. We see nothing in this decision which impinges upon the validity of *Bartels* (*supra*).

Unlike the situation in *Tango* (*supra*), where the supervisor's determination to entrust the children to one of the parents rather than bring them before the Judge for a decision was within the "reasoned judgment" of her assigned duties and could

produce "different acceptable results" (*Tango v Tulevech,* 61 NY2d 34, 41, *supra*), the situation with placement is different. Even assuming that the decision to remove or not to remove a child from its parents is discretionary (*see, Wayne S. v County of Nassau, Dept. of Social Servs.,* 83 AD2d 628; *Rittscher v State,* 352 NW2d 247 [Iowa]), once a determination has been made to place the child in foster care, that commitment does not admit of "different acceptable results" but must be accomplished in accordance with "a governing rule or standard" of reasonable care (*Tango v Tulevech, supra,* p 41). To be sure, some discretion is per force exercised — almost every act entails some, as the Court of Appeals noted (*Tango v Tulevech, supra,* p 41) — but the discretion that a social worker exercises does not rise on a "continuum of discretion" to the level of a quasi-judicial act (*Smith v Cooper,* 256 Ore 485, 499, 475 P2d 78, 85). The Court of Appeals in *Tango* (*supra*) merely reaffirmed the principle enunciated in *Rottkamp v Young* (21 AD2d 373, 377, *affd* 15 NY2d 831 *on opn at App Div*) that there "remain some areas of governmental action which cannot be questioned for reasons of policy". However, as we said in *Bartels* (76 AD2d 517, 523, *supra*) "[w]e see nothing in plaintiff's claims here which implicate the kind of planning or quasi-judicial acts which are embraced within the area of governmental discretion (e.g., *Weiss v Fote,* 7 NY2d 579; *Rottkamp v Young,* 21 AD2d 373, affd 15 NY2d 831; *Gross v State of New York,* 33 AD2d 868)." Indeed, the duty to care for the welfare of the children is imposed on the county by the State (Social Services Law §§ 395, 398), including the responsibility to place the children in foster homes or other institutions under proper safeguards (Social Services Law § 398 [6] [g]), to supervise the children while in foster homes (Social Services Law § 398 [6] [h]), and to remove them from the foster home when necessary (Social Services Law § 400). It would be anomalous, to say the least, for the Legislature to impose on the county such a duty, which could be performed by other entities, and then for courts to preclude inquiry into the discharge of those duties, even if resulting from negligence or malice (*see, Rottkamp v Young, supra*).

The overriding weight of appellate authority in this country is in agreement that a State or its subdivisions may be answerable for injuries suffered by children as a result of negligence in the placement or supervision of children in their charge (*see, Hanson v Rowe,* 18 Ariz App 131, 500 P2d 916; *Elton v County of Orange,* 3 Cal App 3d 1053, 84 Cal Rptr 27 [decisions made with respect to the maintenance, care or supervision of a dependent

child, or in connection with its placement in a particular home, may entail the exercise of discretion in a literal sense, but such determinations do not achieve the level of basic policy decisions precluding judicial inquiry into whether negligence of public employees was involved]; *Vonner v State,* 273 So 2d 252, 255 [La]; *Koepf v County of York,* 198 Neb 67, 251 NW2d 866 [placement in foster homes of defenseless children, and the supervision of their health and care, once committed to the custody of the welfare department must be accomplished with reasonable care commensurate with the circumstances, and a political subdivision of the State can be held liable for a breach of that duty]; *National Bank v Leir,* 325 NW2d 845 [SD] [since placement and follow-up of children in foster care are ministerial in nature, doctrine of sovereign immunity does not extend to preclude a suit based on these actions]; *Little v Utah State Div. of Family Servs.,* 667 P2d 49, 50-52 [Utah]). Indeed, to paraphrase Voltaire, if New York did not have a *Bartels,* we would have to decide one.

V

■ ■ Accordingly, in reaffirming the continued vitality of *Bartels v County of Westchester* (76 AD2d 517, *supra*), we hold that a claim of immunity cannot be raised to bar inquiry into a county's alleged negligent acts in the placement and supervision of a child in foster care and that any claim of negligence relating thereto must be resolved at trial. In light of the foregoing, Special Term correctly rejected any attempt by the county defendants to amend their answer to assert what would be an ineffectual defense and to seek summary judgment as to them, based on that defense. Therefore, its order should be affirmed.

RUBIN, LAWRENCE and EIBER, JJ., concur.

Order of the Supreme Court, Nassau County, dated May 23, 1984, affirmed, with costs.