OPINION OF THE COURT
Loren N. Brown, J.
This is a proceeding brought pursuant to CPLR article 78 to obtain a judgment nullifying the decision of the respondent Board which granted a special permit for a four-unit apartment house on a 31-acre parcel of land in the Town of Moreau.
The petitioners are residents of Moreau and own land in the vicinity of the subject 31-acre parcel. On October 22, 1985, the Town of Moreau Zoning Board (Board) granted the application of respondents Anthony F. Simione, Anthony L. Simione and Donald J. Bates, doing business as SBS Development (hereinafter developers) to build a single four-unit apartment building on the same parcel of land. The Board made a finding of no significant environmental impact without requiring the submission of an environmental impact statement (EIS) by the developers. Originally, the developers had applied for a permit to develop the land with 20 units of four apartments each. However, that application was withdrawn. These petitioners brought a proceeding pursuant to article 78 to review the approval of the permit. The petition was dismissed by the order of Justice William Keniry. Permit secured, the first four-unit apartment building was built. On November 10, 1986, the developers submitted another application to the Board for a second four-unit apartment house. Once again, the permit was granted without an EIS, and with a finding of no environmental impact.
The petitioners now challenge the Board’s action on the grounds that by applying for a permit for one unit, the developers had, through word and deed, been foreclosed from seeking further permits, and that the respondents did not comply with ECL article 8, and the rules and regulations (SEQRA) promulgated by the Commissioner of Environmental Conservation. Specifically, it is contended that the Board should have required the filing of an EIS.
The respondents deny the need to require an EIS, because the issuance of a permit is, they argue, a ministerial function which does not trigger the need for an environmental impact statement. (ECL 8-0105 [5] [ii]; 6 NYCRR 617.2 [a].) Addition *1054 ally, it is contended that the Board carefully considered the environmental concerns and properly decided that an EIS was not necessary. The developers contend that they should not be foreclosed from this or other four-unit apartment buildings, because they never represented that they would build only one building, and should not be bound by the representations of others.
Addressing the need for an EIS, the court must first decide whether the action of the Board was a ministerial act not triggering the need for such a statement. The court has found no more concise statement of the law than the following language from Matter of Filmways Communications v Douglas (106 AD2d 185, 186): "Under SEQRA, an environmental impact statement is required on any 'action’ proposed or approved by a government agency that may have a significant effect on the environment (ECL 8-0109, subd 2). Expressly excluded from the definition of the word 'action’ are 'official acts of a ministerial nature, involving no exercise of discretion’ (ECL 8-0105, subd 5, par [ii]). 'Discretionary or quasi-judicial acts involve the exercise of reasonable judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result.’ (Tango v Tulevech, 61 NY2d 34, 41.) Discretion involves a 'latitude of choice within certain legal bounds’ (Webster’s Seventh New Collegiate Dictionary, p 238 [1970]).”
The Town of Moreau Code, in addressing special permits, states in section 38-18 (c) (1):
"(c) Special permits.
"(1) After due public notice and hearing, the Board of Appeals may issue special permits for any of the uses for which the ordinance requires the obtaining of such permits from said Board...In granting such a special permit, the Board may specify appropriate conditions in harmony with the following standards:
"(a) The use shall be of such location, size and character that it will be in harmony with the appropriate and orderly development of the district in which it is situated and will not be detrimental to the orderly development of adjacent districts.
"(b) The location and size of the use, the nature and intensity of the operations involved in or conducted in connection therewith, its site, layout and its relation to the street giving *1055 access to it shall be such that traffic to and from the use and the assembly of persons in connection with it will not be hazardous or inconvenient to the neighborhood or conflict with the normal traffic in the neighborhood.”
It is clear from the foregoing that the Board has discretion to issue a permit, and need not approve any proposal because certain specific standards have been met. The Board has power to mold the project to community needs. With such discretion, the action of the Board cannot be said to be ministerial.
Addressing the respondents’ contention that the Board, after deliberation, properly found that no EIS was needed for just one mere apartment house, the court points to 6 NYCRR 617.11 (b), which provides that in determining whether an action* may have a significant impact on the environment, the Board should have taken into consideration.
"other simultaneous or subsequent actions which are * * * "(1) included in any long-range plan of which the action under consideration is a part;
"(2) likely to be undertaken as a result thereof; or "(3) dependent thereon”.
By treating the second application in isolation, the Board was not acting in compliance with the foregoing rule. When Justice Keniry rendered his decision in the previous article 78 proceeding, there was, in fact, an application for one building, and no solid evidence that there would be subsequent applications. By the second application, it became quite apparent that the developers intend to develop the 31 acres further. They have, after all, prepared surveys in anticipation of large scale development, submitted one proposal which, though withdrawn, contemplated 20 buildings, and admit, on page 8 in their brief, that they may build other buildings. Section 617.11 (b) (1) required Board to measure the impact of the project as if the land were to be substantially developed, and in order to do that, it should have required submission of an EIS.
The result reached by the court is the only one which is consonant with the State’s policy to protect the environment. To allow a piecemeal development, single building by single building, single permit by single permit, without an early examination of the environmental impact, would violate that policy.
*1056 Finally, as to the purported representations that the developers would only build one building, thus allegedly foreclosing further development, the court finds nothing in the record to indicate that the developers made such representation. Though the town’s attorney may have made such statements, he could not bind the developers. Also, the mere fact that the developers originally asked for a permit for one building should not foreclose all further development, provided that all environmental concerns are met.
Accordingly, the court grants the petition to annul the decision of the Board.

 The approval of the permit would be considered an "action” within the meaning of 6 NYCRR 617.11 (b). (See, 6 NYCRR 617.11 [b].)