OPINION OF THE COURT
Edwin Margolis, J.
This is an action to recover from the State sums of money *244 that, it is alleged, are owed to claimant under the terms of a contract entered into by claimant, the Office of the State Comptroller (OSC), and the Power Authority of the State of New York (Authority). The claim alleges that the Comptroller wrongfully refused to certify certain invoices submitted for payment and that, by doing so, he breached the terms of the written agreement. OSC entered into this contract as a principal in order to meet its obligations under Laws of 1989 (ch 469) discussed below. Defendant moves to dismiss the claim on the ground that the complained of actions of the Comptroller were discretionary and quasi-judicial and therefore may be reviewed only by way of an article 78 proceeding in Supreme Court.
BACKGROUND
Claimant Theodore Barry & Associates (TB&A) is a California corporation qualified to conduct business in this State. On October 19, 1990, claimant, the State of New York (through OSC), and the Authority executed a written agreement authorizing claimant to conduct a program, financial and operations audit of the Authority. The Authority is "a legal entity separate and distinct from the State of New York” (Cole v State of New York, 64 AD2d 1023, 1024). However, OSC is required to perform such an audit of the Authority at least once every five years by section 4 of chapter 469 of the Laws of 1989. In carrying out that function, OSC decided, in this instance, to directly procure the services of an independent auditor, a method specifically permitted by the legislation.
The statute requires the Authority to reimburse OSC for the costs of any such audit. To obviate the necessity of paying claimant in the first instance and then being reimbursed by the Authority, OSC provided in the contract that the Authority would pay claimant’s vouchers directly upon their certification by OSC. This was the sum and substance of the Authority’s nominal role under the contract. It was merely a conduit for the payment of bills. The true principals in interest were claimant and OSC. From the claim, it appears that invoices from claimant totaling $562,364 were certified by OSC and paid by the Authority in this manner. Claimant submitted a draft report of the completed audit on June 12, 1991, but OSC was not satisfied with the work.[1]
*245 The agreement gave OSC full power to terminate a Consultant’s services at any time that "such termination is in [OSC’s] best interest.” Consequently, on the basis of OSC’s dissatisfaction both with claimant’s report and with its prior work, Assistant Deputy Comptroller Rolan Malan served notice on claimant, on July 10, 1991, that the agreement was terminated and that "OSC would take no further action to release the balance of contract amounts due to TB&A.” Claimant then submitted final invoices totaling $183,676. In his affidavit, Assistant Deputy Comptroller Malan states, "[TJhese invoices could not be certified for payment since they represented services not performed in accordance with the terms of the contract.”
In its first cause of action, claimant demands $183,676, the amount which, it is alleged, the Office of the Comptroller wrongfully refused to certify for payment under the contract. In its second cause of action, claimant demands $394,042, which, it is alleged, represents the sum due for "[t]he reasonable value of the services rendered and incidental and other expenses incurred by TB&A for OSC at its special instance and request.”[2]
The agreement between OSC, the Power Authority, and claimant requires, in article V, paragraph A, that the Consultant (claimant) submit detailed invoices to OSC each month. "OSC shall verify and may approve in whole or in part each invoice for payment” (emphasis supplied). Paragraph B states, in relevant part: "The Authority shall pay within thirty (30) days * * * the amount of any invoice that has been certified for payment by OSC. The basis for OSC certification shall be a finding that the expenses are reasonable, necessary and correct, and billed in accordance with the provisions of this Agreement.”
OSC’s general power to terminate the contract is set forth in article III. The contract can be terminated if OSC finds the *246 contractor’s work to be deficient and the defects cannot be corrected. The agreement states that, if termination occurs, "the Consultant will be paid by the Authority for whatever work was completed pursuant to the request for Proposal and Response.” Article XIV provides additional details of the parties’ powers and responsibilities in the event of termination and includes the following: "The Authority shall pay the Consultant all reasonable fees and expenses which are reimbursable under this Agreement and not paid prior to the effective date of the notice of termination * * * Termination shall not relieve any party of any obligation which arose or may arise out of work performed prior to termination.”
DISCUSSION
As previously noted, the Authority is a separate entity from the State of New York, and therefore this claim is not and cannot be an effort to obtain money damages from the Authority even though the Authority, not OSC, would have paid claimant if the invoices had been certified. Consequently, claimant’s first cause of action alleges that OSC’s failure to certify the invoices was a breach of contract that caused monetary loss in the amount that "would have been paid” by the Authority if certification had been given.
We also observe, as a preliminary matter, that the actions of the Comptroller giving rise to this claim are not purely ministerial in nature. It is well established that the State can be liable for the improper performance (or omission) of purely ministerial acts and that this court has jurisdiction to hear actions for money damages based on such alleged wrongdoing. (Tango v Tulevech, 61 NY2d 34, 40.) In the instant case, however, the actions in question are the Comptroller’s determinations whether certain of claimant’s expenses were "reasonable, necessary and correct, and billed in accordance with the provisions [of the contract].” Making such a determination requires the exercise of discretion and reasoned decision-making.
Because the State has not waived its immunity to suit for acts that are "performed as part of its governmental function, involving the exercise of discretion or judgment of a quasi-judicial nature” (Hodes v State of New York, 113 AD2d 121, 122), counsel for defendant asserts that this claim must be dismissed. Counsel for claimant, on the other hand, argues that this court is the proper forum in which to sue the State *247 for breach of contract. (See, e.g., Matter of City Constr. Dev. v Commissioner of N. Y. State Off. of Gen. Servs., 176 AD2d 1145.)
In our view, the instant action is no more than a fairly typical breach of contract claim against the State and, as such, it is properly commenced in this court. The cases relied upon by defendant involve actions and decisions of State officials that directly carried out the officer’s governmental duties. These include the Department of Social Services’ determination of amounts due to public assistance benefit providers (Matter of Gross v Perales, 72 NY2d 231); the Comptroller’s decision regarding whether money should be paid out pursuant to provisions of the Highway Law (Silverman v Comptroller of State of N. Y., 69 Misc 2d 52); the Comptroller’s decision to withhold interest on payments due certain property owners (Matter of Dellas v McMorran, 51 Misc 2d 223); the Comptroller’s decision to withhold money authorized by agents of the Thruway Authority (New York State Thruway Auth. v State of New York, 51 Misc 2d 1003); and decisions of the State Liquor Authority cancelling claimants’ liquor license (Speare v State of New York, 42 Misc 2d 304; Fraccola v State of New York, 35 Misc 2d 74).
In the instant case, therefore, an article 78 proceeding would have to be brought to challenge the manner in which the Comptroller directly carried out his constitutional and statutory power to conduct audits. If, for example, it was alleged that the Comptroller had no reasonable basis for assigning a specific period of probable usefulness to certain equipment or that he was arbitrary and capricious in adopting a report of outside auditors as his own, those actions could be reviewed only by an article 78 proceeding.
Claimant, however, is not challenging the Comptroller’s exercise of his constitutional or statutory power to audit but, rather, his exercise of a specific power given to him solely by the terms of the contract for services that he entered into. If an identical contract with another State official (the Commissioner of any agency, for example) were involved or if the contract in question were for something clearly dissimilar to the Comptroller’s governmental power to audit (cleaning services or package delivery, for example), the distinction would be much easier to see. The confusion in the instant action arises, we believe, from the apparent similarity between the Comptroller’s actions in performing his governmental power *248 to audit and his actions in carrying out his contractual power to approve or disapprove claimant’s invoices.
There are important distinctions between these seemingly similar activities, however. As discussed above, the power to perform the actions arises from very different sources. In addition, different questions must be asked in order to determine if the Comptroller has properly exercised his powers. In an article 78 proceeding challenging the actions of a public official, CPLR 7803 directs that "[t]he only questions that may be raised” are whether a public official or body (1) has failed to perform "a duty enjoined upon it by law”, (2) has proceeded or is about to proceed "without or in excess of jurisdiction”, (3) has made a determination that was "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion”, or (4) has made a determination as a result of a hearing where, "on the entire record”, the determination is not supported by "substantial evidence”.[3] In the situation presented here, counsel for defendant urges that the Comptroller’s actions must stand unless they are found — in the proper forum — to be "arbitrary and capricious or an abuse of discretion”.
In determining whether the Comptroller carried out his contractual obligation to certify or withhold certification from claimant’s vouchers, an entirely different question must be asked: Were the vouchers for expenses "reasonable, necessary and correct, and billed in accordance with the provisions of [the] Agreement”? This inquiry is not adequately answered by determining only whether the Comptroller acted arbitrarily or capriciously.
The standard by which the Comptroller’s actions are measured in an article 78 proceeding, as opposed to a contract action, is also strikingly different. It is hornbook law that the claimant in a contract action must prove by a preponderance of the evidence that the defendant breached provisions of the agreement. In the type of article 78 proceeding described above, a petitioner has the much more difficult burden of proving that "there is no rational basis for the exercise of discretion or the action complained of is ' "arbitrary and capricious” ’.” (Matter of Pell v Board of Educ., 34 NY2d 222, *249 231.) All that the State need demonstrate in order to defeat a petition alleging arbitrary action is that there is a "sound basis in reason” (supra, at 231) to support the governmental action.
When a State official, here the Comptroller, enters into an ordinary contract for the purchase of goods or services he should be subject to the same standards that apply to private parties entering into such agreements. If the standard applicable to article 78 respondents was routinely applied to State agencies to determine whether they had breached provisions of business contracts, the level playing field fairness of an ordinary business contract would be destroyed because the State would, in effect, be the sole arbiter of the correctness of its actions with respect to the voluntary covenants that it freely entered into and that were relied upon by claimant. Under such circumstances, the State would find it extremely difficult to locate any partners who would wish to contract with it, and this court would not have on its docket the many contract actions that presently exist. For the reasons set out above, we conclude that claimant’s first cause of action for breach of contract is properly brought in this court.[4]

. In August 1991, claimant’s report was submitted to the Governor and *245 other officials who were to receive copies of any audits. The cover letter from OSC stated that while the report "provides some information which may be of interest”, it "does not comply with the contract with TB&A because it is not an audit report prepared in accordance with Government Auditing Standards and does not provide the required in-depth evaluation of management practices and operational activities at [the Power Authority].”

. As noted by counsel for defendant, it appears that the second cause of action is based on quantum meruit and covers the same services as the first cause of action but values the services at their "reasonable” value rather than at the contract price.

. Question 1 relates to the former writ of mandamus, question 2 relates to the former writ of prohibition, and question 4 relates to the former writ of certiorari. Question 3 has been described as raising several questions "often found in the cloudy areas between the writs instead of at the sunny center of any one of them.” (Siegel, NY Prac § 557, at 871 [2d ed].)

. Because the second cause of action seeks precisely the same relief on a theory of quantum meruit, our holding that a valid cause of action for breach of contract exists makes consideration of the second cause of action unnecessary. Claimant’s entitlement to compensation for the work it performed is governed by the terms of the agreement.