OPINION OF THE COURT
David I. Schmidt, J.
*608 Defendant the City of New York (City) moves for an order pursuant to CPLR 4404 (a) setting aside the jury’s verdict as to liability in favor of plaintiff as against the City, and dismissing the complaint or, in the alternative, ordering a new trial on the issue of liability, or for an order setting aside the jury’s verdict on damages as excessive and unsupported by the weight of the credible evidence and ordering a new trial; or, in the alternative, reducing the amount of damages; and for an order staying entry of judgment until this motion is decided.
On August 2, 1986, an unidentified comatose male was found in the building at 32 Malta Street, Brooklyn, New York, within the confines of the 75th Precinct. Drugs were found at the scene. This unidentified male was pronounced dead on arrival at Brookdale Hospital. An autopsy performed by the Kings County Medical Examiner’s Office on August 3, 1986 found that the decedent died from “fatty cirrhosis of the liver”. On August 5, 1986, the decedent’s face was photographed and fingerprints were taken. Thereafter, the body remained at the morgue for 30 days as an unidentified “John Doe”.
At the time the decedent was found, the responding police officer at the scene prepared a missing/unidentified persons complaint report, and the case was assigned to Detective Richard Brew of the 75th Precinct. Detective Brew filled out a complaint follow-up report on August 5, 1986, and another on August 13, 1986, when he closed the case at the precinct level and referred the case to the Missing Persons Unit (MPU). The case was assigned to MPU Detective Hetzler on August 14, 1986. After receiving the case, Detective Hetzler checked office records with negative results. Thereafter, on September 4, 1986, plaintiff identified the decedent as her son, Andrew Hick-son.
Two days after decedent’s death, plaintiff was informed by her son’s girlfriend that Andrew had been missing for two days. Plaintiff went to the 73rd Precinct to file a missing persons report, but no one there would take a missing persons report from her. Thereafter, she went to the 75th Precinct to file a missing persons report. She was advised at the 75th Precinct to return to the 73rd Precinct because the police only take a missing persons report in the precinct from which the person is missing, and her son lived in the 73rd Precinct. Plaintiff testified that she went on a daily basis to the 73rd Precinct, but the police never took a missing persons report.
About two weeks after she first learned that her son was missing, plaintiff spoke to Community Affairs Officer J.C. *609 Reese to find out whether the police were wrong in refusing to take a missing persons report. Officer Reese advised her that the police could not take a report under the circumstances. Thereafter, she contacted the office of Congressman Major Owens, and was advised by an attorney in that office that a book containing pictures of unidentified dead persons was kept at Police Headquarters.
On September 2, 1986, plaintiff went to the MPU Office at Police Headquarters and while looking through a book of dead persons, discovered a picture of her son. She was directed to the morgue, where, on September 4, 1986, she identified the body of her son.
Plaintiff testified that her son’s body was so decomposed that he could not have a proper funeral. The body had to be wrapped like a mummy, the casket had to be closed and the funeral service lasted only 45 minutes, due to the body’s strong odor. As a result, plaintiff claimed that she suffered and continues to suffer from anxiety, depression, and posttraumatic stress disorder.
The plaintiff commenced an action against defendant City and defendant the New York City Health and Hospitals Corporation. At the end of the case, the court dismissed most of plaintiff’s claims against the defendants. The court submitted to the jury a special interrogatory: “Was the defendant City’s actions in not taking a Missing Persons Report discretionary or ministerial?” The jury found that the taking of a missing persons report is ministerial. The jury found only defendant City liable. The jury awarded plaintiff $446,428.57 for past pain and suffering and $14,553,571.43 for future pain and suffering.
In this motion, defendant City argues that, as a matter of law, the taking of a missing persons report is discretionary and, therefore, the defendant City cannot be held liable for the failure of the police department to take a missing persons report.
New York City Police Department Patrol Guide § 108-9, in effect at the time of this within incident, defines “Missing Person” as follows:
“definitions — missing person — Person missing from a new YORK CITY RESIDENCE and:
“a. under eighteen (18) years of age; or
“b. mentally or physically impaired to the extent that hospitalization may be required; or
*610 “c. senile, retarded or handicapped and not capable of self-care or clear communication; or
“d. sixty-five (65) years of age or older; or
“e. possible victim of drowning; or
“f. indicated an intention of committing suicide; or
“g. absent under circumstances indicating unaccountable or involuntary disappearance.”
Plaintiff testified that at the time she went to the precinct to report her son missing, she advised the police that her son was ill and suffered from seizures which rendered him incapable of communication; and it was her son’s usual practice to come home, and therefore it was unusual for him to be away for any length of time.
Louis C. Papa, who was on the New York City Police Department for over 34 years and retired with the rank of full Inspector, was called as plaintiffs expert and testified that based on the information imparted to the police by plaintiff, the police were required to fill out a missing persons report pursuant to items b, c and g of the above-noted Patrol Guide book.
Defendant City argued, that plaintiffs’ decedent, a 34 year old who had not lived at home for three years, did not fit into any of the categories of missing persons listed in the Patrol Guide. The defendant City introduced into evidence decedent’s prior hospital records for a period of three years which did not indicate that he suffered from seizures. In addition, defendant City’s attorney claims that plaintiff testified that the one time she observed her son black out, the entire episode lasted no longer than 10 minutes, that her son was coherent when he awoke and that he did not require hospitalization.
The content and truth of what plaintiff told police at the time she attempted to report her son missing is not for this court to determine. That is clearly an issue of fact which falls within the province of the jury. However, even accepting as true what plaintiff claims she told the police, the defendant City cannot be liable for the failure of the police to complete a missing persons report for the reasons to be stated herein.
In Tango v Tulevech (61 NY2d 34 [1983]), plaintiffs sued Tulevech, an employee of the Rockland County Department of Probation, for interfering with a parent’s custodial rights and for civil rights violations. Plaintiffs claimed that defendant Tulevech negligently performed her duties.
The Court, in affirming the dismissal of the complaint, distinguished between discretionary and ministerial acts. The Court stated as follows (supra, at 40-41):
*611 “Municipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago * * * but other recognized limitations still govern the tort liability of municipal officers. Relevant here is the rule that when official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice. Conversely, when the action is exclusively ministerial, the officer will be liable if it is otherwise tortious and not justifiable pursuant to statutory command * * * In Rottkamp the Appellate Division held that a building inspector who refused to issue a building permit was immune from suit because his act was discretionary (21 AD2d, at p 376). Marking the distinction between discretionary and ministerial acts, the court noted that: ‘ [e] ach case must be decided on the circumstances involved, the nature of the duty, the degree of responsibility resting on the officer, and his position in the municipality’s table of organization. It must still be true that discretion is indicated if the powers are “to be executed or withheld according to his own view of what is necessary and proper” ***>***
“As Prosser has noted, almost any act admits some discretion in the manner of performance, even driving a nail * * * Nevertheless, the rule to be derived from the cases is that discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. Applying that standard, defendant Tulevech acted in a discretionary capacity when she refused to detain the children and take them before a Judge and therefore defendants are immune from common-law liability.”
In Kenavan v City of New York (70 NY2d 558 [1987]), the fire department responded to a call of a burning vehicle in the street. An approaching vehicle being operated by defendant Gardell plowed into the firefighters, killing one and injuring four firefighters. Plaintiffs claimed that Verdonik, the Fire Captain on the scene, was negligent in failing to establish fire lines, and that Ogno, the operator of the fire vehicle, was negligent in failing to properly park the fire engine.
In affirming the dismissal of this negligence claim, the Court stated that “liability will not be imposed where the firefighter’s conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions that, in retrospect show *612 poor judgment, but judgment nonetheless” (supra, at 569). It was further determined that, despite expert testimony that in accordance with proper firefighting procedures fire lines should have been set up and the fire engine should have been parked in another spot, the City could not be liable. There was no evidence presented that these rules must be followed at the scene of a fire. The Court found that the actions of the firefighters were matters of judgment and no liability attached.
Plaintiffs expert in the present action, Louis C. Papa, in response to a hypothetical question of whether under the circumstances the police should have completed a missing persons report, answered as follows: “If she was credible, competent and sincere, at the very least I would have had either a patrol supervisor or someone do an initial investigation to do that. This person had left under extraordinary circumstances, and if it was not a usual practice, then I would prepare a report for her”. (Transcript, at 631, line 23 through 632, line 6, annexed as exhibit D to plaintiffs affirmation in opposition.) In addition, Papa testified that certain terms contained in the Patrol Guide definition of missing persons are subject to interpretation. Furthermore, Papa testified that the police do not take reports of every missing person.
It is clear that in a city the size of New York, the police department has set up guidelines for taking missing persons reports so that the police department is not inundated with unnecessary missing persons investigations. It is left to the police officer, using his or her professional expertise and ability to judge the credibility of a complaint, to determine whether a missing persons report should be filed.
From plaintiffs expert’s own testimony, it is clear that credibility is a factor in determining whether to file a missing persons report and that not all missing persons claims should result in the filing of a missing persons report. In addition, the police guidelines indicate that discretion should be used and not every missing persons claim should result in the filing of a report.
In this case, several police officers determined that under the circumstances presented, a missing persons report should not be filed. This determination involved the exercise of reasoned judgment which could produce different results. The filing of a missing persons report is left to the discretion of the police officer, and he or she is to determine what is necessary and proper. Under these circumstances, the filing of a missing persons report is a discretionary act for which the defendant *613 City cannot be held liable, even if the police officers were negligent. (Tango v Tulevech, supra; Kenavan v City of New York, supra.)
In addition, the court notes that the Patrol Guide procedures “are general guidelines * * * that neither impose a clear legal duty nor constitute a well-developed body of law and regulations with positive commands mandating the performance or nonperformance of specific acts” (Lawrence v City of New York, 240 AD2d 711 [2d Dept 1997]; see also, Luongo v City of New York, 240 AD2d 712 [2d Dept 1997]; Stea v City of New York, 240 AD2d 725 [2d Dept 1997]).
Plaintiffs reliance on Duffy v City of New York (178 AD2d 370 [1st Dept 1991]) is misplaced. The lower court’s decision in Duffy is annexed to defendant City’s moving papers as exhibit A.
In Duffy v City of New York (supra), decedent Edward Kern was found dead with identification in his pocket. When he failed to return from work, his sister reported him missing. It was not until 18 months later, after Kern was buried in Potters Field, that plaintiff Duffy, mother of Kern, was advised of the whereabouts of her son’s body. In affirming the jury verdict in favor of plaintiff, the Court found that the detective’s failure to report the recovery of the body of Kern to the Missing Persons Bureau constituted a failure to perform a ministerial function since no subjective thinking was necessary to pass on the information.
When a body is found, even with identification, if the next of kin cannot be located, it is considered unidentified. Clearly, the information should be passed on to MPU.
In this case, the detective assigned to the case after the body of Andrew Hickson was found in fact performed the ministerial act of filing a report with MPU. The issue here is whether the police should have filed a missing persons report. For the reasons stated above, the filing of a missing persons report is a discretionary act, as a matter of law.
Accordingly, defendant City’s motion to set aside the jury’s verdict and for dismissal of the complaint is granted. The complaint is dismissed.