Informal Opinion No. 2011-9 Paul Celentano Associate Attorney Workers' Compensation Board
20 Park Street Albany, NY 12207
Dear Mr. Celentano:
You have requested an opinion on behalf of the Independent Livery Driver Benefit Fund ("Fund") board of directors as its secretary, relating to the status of the Fund under state law. First, you have asked whether the Fund is a "public entity" as defined in the Public Officers Law. Second, you have asked whether the State will defend, indemnify, and save harmless members of the board of directors of the Fund in the performance of their official duties under Public Officers Law § 8. Finally, you have asked whether members of the Fund's board of directors are entitled to the protection of qualified immunity in the performance of their official duties. As we explain below, we conclude that the Fund is not a public entity, and its directors are not eligible for the defense, indemnification, and immunity that may be accorded to public officers.
1. Public Officers Law § 18 authorizes the governing body of a public entity to confer the benefits of defense and indemnification in civil actions or proceedings on its employees for acts or omissions alleged to have occurred while the employee was acting within the scope of his or her public employment. For purposes of section 18, a "public entity" is (1) a county, city, town village or any other political subdivision or civil division of the State; (2) a school district, board of cooperative educational services, or any other governmental entity or combination or association of governmental entities operating a public school, college, community college, or university; (3) a public improvement or special district; (4) a public authority, commission, agency, or public benefit corporation; or (5) any other separate corporate instrumentality or unit of government. Public Officers *Page 2 
Law § 18(1)(a). Section 18 authorizes the governing board of a public entity to extend to employees of these entities certain benefits that are accorded by Public Officers Law § 17 to employees of the State.
The Fund was created by statute in 2008 to provide workers' compensation benefits to livery drivers who are independent contractors rather than employees of a livery provider or "livery base." Independent contractors are ordinarily not eligible for such benefits, and the Fund was established by the Legislature as the mechanism through which a livery base provides workers' compensation benefits for such drivers. The Fund was established as a not-for-profit corporation, and the provisions of the Not-for-Profit Corporation Law apply to the Fund to the extent they do not conflict with the Fund's enabling statute. Executive Law § 160-bbb(1). The Fund is comprised exclusively of moneys assessed from independent livery bases and is used to purchase an insurance policy to provide workers' compensation benefits to injured independent livery drivers. Executive Law §§ 160-ccc, 160-ddd. For purposes of the Workers' Compensation Law, the Fund is the employer of independent livery drivers. Workers' Compensation Law § 18-c(7).
The Fund's powers are exercised by a nine-member board of directors appointed by the Governor. Executive Law § 160-bbb(1), (2). The directors establish a plan of operation for the administration of the Fund, which must include the procedure for collecting and managing the Fund's assets and for determining and collecting the appropriate amount of annual assessments from independent livery bases to pay for the insurance policy from which such benefits are paid. Executive Law §§ 160-bbb(6)(c)(ii), (iv); 160-ccc; 160-ddd. For their attendance at meetings, the directors are entitled to compensation, as authorized by the board of directors, in an amount up to $200 per meeting, and to reimbursement of their actual and necessary expenses.[1] Id. § 160-bbb(4). They may engage in any other public or private employment unless prohibited by other law.Id. § 160-bbb(5).
The Workers' Compensation Board exercises regulatory oversight over the independent livery bases. Executive Law §§ 160-eee, 160-hhh. If the Fund has reason to believe that an independent livery base has violated the statute's provisions, it refers the matter to the Workers' Compensation Board. Executive Law § 160-hhh(8).
We are of the opinion that the Fund is not a public entity for purposes of Public Officers Law § 18. That statute lists five covered categories, and the only one that is even arguably applicable is the last: "any other separate corporate instrumentality of government." But while the Fund is, by statute, a separate *Page 3 
corporate entity, we do not believe that it is an instrumentality of government. Its function is to provide a service ordinarily provided by employers, namely obtaining insurance to provide workers' compensation benefits, and the individuals for whom it provides this service are private rather than public workers.
Further support that the Fund is not a "public entity" for purposes of section 18 is found in analogous statutes establishing other not-for-profit corporations to provide workers' compensation benefits to individuals who otherwise would not be eligible for them. The statute creating the Fund appears to have been modeled on the law establishing the Black Car Operators' Injury Compensation Fund ("Black Car Operators' Fund"), which was modeled on the law establishing the Jockey Injury Compensation Fund ("Jockey Fund"). Executive Law article 6-F; Racing, Pari-Mutuel Wagering Breeding Law § 221; see also Sponsor's Memorandum in Support of 1999 N.Y. Assembly Bill A. 3517 (relating to Black Car Operators' Fund);[2] Letter from Matthew W. Tebo, Esq., Department of State Legislative Counsel, to Terryl Brown Clemons, Esq., Acting Counsel to the Governor (July 28, 2008), reprinted in Bill Jacket for ch. 392 (2008), at 12 (relating to Fund). Like the Fund, the Jockey Fund and the Black Car Operators' Fund were established as not-for-profit corporations, and the provisions of the Not-for-Profit Corporation Law apply to them insofar as those provisions do not conflict with their enabling statutes. Executive Law § 160-dd; Racing, Pari-Mutuel Wagering Breeding Law § 221(1). Their powers are exercised through boards of directors. Executive Law § 60-dd; Racing, Pari-Mutuel Wagering Breeding Law § 221(1).
Both the Jockey Fund directors and the Black Car Operators' Fund directors are required by law to purchase an insurance policy to protect these funds and their directors, officers, agents, and other representatives from liability; the Black Car Operators' Fund statute also specifically provides for indemnification. Executive Law § 160-mm; Racing, Pari-Mutuel Wagering Breeding Law § 221(11). This demonstrates that the Legislature did not think of these funds as "public entities" authorized by section 18 to provide defense and indemnification for their officers and employees. Because the statute creating the Fund was modeled after these statutes, it would seem by analogy that the Fund also is not a public entity under section 18. To be sure, unlike the Jockey Fund and the Black Car Operators' Fund, the Livery Drivers' Fund is not required by statute to purchase insurance, but the directors are authorized by the Not-for-Profit Corporation Law to indemnify its officers and directors and to purchase indemnification insurance. Not-for-Profit Corporation Law §§ 722, 726. There is no evidence in the legislative history of the statute creating the Fund to indicate that the Legislature omitted the insurance provision in the Fund's enabling statute because it thought of the Fund as a "public *Page 4 
entity" under Public Officers Law § 18; it may simply reflect the fact that the Fund has authority to purchase insurance under the Not-for-Profit Corporation Law and needs no special authority here. It seems implausible to read into the Legislature's silence on this subject an intent to make the Livery Drivers' Fund a public entity under Public Officers Law § 18 when other similar funds are not.
2. You also have asked whether the State will defend and indemnify the Fund's directors in the performance of their official duties under Public Officers Law § 18 or other provision of state law. We conclude that the State will not.
Defense and indemnification for State employees are governed by Public Officers Law § 17. Defense and indemnification for employees of other public entities are governed by Public Officers Law § 18. These two sections are mutually exclusive, because Public Officers Law § 18(1)(a) provides that the definition of "public entity" in section 18 does not include the State or any other public entity the officers or employees of which are covered by section 17. As discussed above, we are of the opinion that the Fund is not a "public entity" under section 18, and therefore defense and indemnification cannot be authorized by that section.
Nor are defense and indemnification of Fund directors authorized by section 17. That section covers only employees of the State, defined as "any person holding a position by election, appointment or employment in the service of the state" or a volunteer expressly authorized to participate in a state-sponsored volunteer program. Public Officers Law § 17(1)(a). Section 17 does not cover independent contractors.Id. Here, while the Fund's directors are holding their positions by appointment, we believe they are not "in the service of the State" when exercising their powers, because the Legislature has established the Fund as a not-for-profit corporation, separate and distinct from the State.
Whether boards, commissions, and other such entities were established as entities separate from the State has been a significant factor in past section 17 determinations. Thus, for example, we concluded that the officers and employees of the Hunter College Foundation and the officers and directors of Safe Affordable Housing, Inc., both established by state law as not-for-profit corporations, were not eligible for section 17 coverage. Op. Att'y Gen. No. 97-F8 (Hunter College Foundation); Op. Att'y Gen. (Inf.) No. 82-F8 (Safe Affordable Housing, Inc.). In contrast, we have opined that members of the Deferred Compensation Board and members of local emergency planning committees, entities created by state law that did not establish them "separate and apart from the State", were eligible for state-provided defense and indemnification. Op. Att'y Gen. No. 99-F4 (Deferred Compensation Board); Op. Att'y Gen. No. 89-F2 (local emergency planning committees). Additionally, the Fund is entirely self-funding, and we have found *Page 5 
legislative provision of state funds relevant to a determination that members of an entity are "in the service of the State." Op. Att'y Gen. No. 99-F4; Op. Att'y Gen. No. 89-F13 (New York members of Interstate Sanitation Commission).
We therefore conclude that the directors of the Fund are not in the service of the State and thus that they are not eligible for defense and indemnification pursuant to section 17.
3. Finally, you have asked whether members of the Board of Directors are entitled to the protection of qualified immunity in the performance of their official duties for the Fund under state laws. Because they serve a not-for-profit corporation instead of a governmental entity and are not governmental officers or employees, we are of the opinion that they are not eligible for qualified immunity under the common law doctrine available to governmental actors whose official action involves the exercise of discretion or expert judgment in policy matters. See Tango v. Tulevech, 61 N.Y.2d 34, 40 (1983). They may be eligible for qualified immunity pursuant to Not-for-Profit Corporation Law § 720-a, which confers this protection on uncompensated directors of certain not-for-profit corporations. Whether they are eligible for qualified immunity pursuant to section 720-a depends on whether the board of directors has authorized compensation for attending meetings pursuant to Executive Law § 160-bbb(4) and whether the Fund is considered a not-for-profit corporation of the type described in section 501(c)(3) of the Internal Revenue Code. We are not aware of other state law pursuant to which the Fund's directors may be eligible for qualified immunity.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General in Charge of Opinions
[1] Administrative expenses are paid out of the Fund. Executive Law § 160-ccc.
[2] Sponsors' Memoranda available at New York State Legislature website, http://public.leginfo.state.ny.us.