[828 NYS2d 502]

LORETTA ABRAHAM et al., Appellants, v CITY OF NEW YORK et al., Respondents, and ROMAN CATHOLIC DIOCESE OF BROOKLYN, New York, et al., Appellants.

Second Department, January 23, 2007

**APPEARANCES OF COUNSEL**

*Vitarelli & DeSorbo, P.C.* (*Sanford F. Young, P.C.*, New York City *[Jan B. Rothman]* of counsel), for plaintiffs-appellants.

*Murphy & Higgins, LLP*, New Rochelle (*David J. Rasmussen* of counsel), for defendants-appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Francis F. Caputo* and *Susan Paulson* of counsel), for respondents.

**OPINION OF THE COURT**

Fisher, J.

The issue presented on this appeal concerns the extent to which a municipality may be held liable for the way it responds to a suspected outbreak of a communicable disease at a school.

Our Lady of Lourdes School is a parochial school run by the Roman Catholic Diocese of Brooklyn (hereinafter the Diocese) as an extension of Our Lady of Lourdes Church (hereinafter the church). The plaintiffs are current and former students and teachers who attended or worked at the school in 2002, as well as the parents and siblings of the students and spouses of the teachers. They commenced this personal injury action against the school, the church, the Diocese, the school's principal, one of its former teachers, and the priest who served as pastor of both the church and the school. The plaintiffs also named as defendants the City of New York and the New York City Department of Health and Mental Hygiene (hereinafter the Department).

The events in question began when, in mid-August of 2002, a teacher, who had worked at the school during the 2001-2002 school year, informed the Diocese and the school's principal that he had been diagnosed with active tuberculosis. The principal,

in turn, notified the Department, which had already received the same information from the teacher's physician. The plaintiffs concede, however, that the Department had no knowledge of the teacher's condition before August 2002.

Upon being told that the teacher would not be returning for the fall semester, a Department representative advised the principal that the school could reopen on schedule in September and that the Department would conduct an investigation thereafter. On or about September 9, 2002, the principal was contacted by a member of the Department's Epidemiology Unit, Magali Calderon, who asked for the names and addresses of all students who had attended classes taught by the former teacher during the prior academic year. Calderon explained that, because tuberculosis has an incubation period of 8 to 12 weeks, meaningful testing could not begin until approximately October 2002. This conversation was followed by a letter from Calderon, dated September 16, 2002, confirming that the Department was obligated to conduct an investigation pursuant to the New York City Health Code and the New York State Sanitary Code, and warning the principal that the information conveyed to him was confidential and could not be disclosed except as authorized by law.

The school opened on schedule in September and, in October, the Department conducted tests on 66 at-risk students. Of these, 45, or approximately 68%, tested positive for tuberculosis. On November 7, 2002, the Department held a public meeting "to discuss the outbreak and spread of tuberculosis at the [school]," and the Department thereafter continued to test, notify, and monitor at-risk individuals within the school community.

The amended complaint generally alleged that the City and the Department owed a special duty to the plaintiffs, which they breached by failing timely to notify persons at risk of infection and other proper parties, by permitting the school to reopen in September 2002, and by failing properly to treat, diagnose, and monitor the plaintiffs. The plaintiffs also allege that the Department violated various unspecified federal, state, and local laws as well as its own internal protocols. The crux of the amended complaint and cross claims, insofar as asserted against the City and the Department, is that they did too little too late to ascertain the existence of, and contain, the outbreak of the disease.

The City and the Department filed a pre-answer motion pursuant to CPLR 3211 (a) (7) to dismiss the amended complaint

and all cross claims insofar as asserted against them on the ground of governmental immunity. The Supreme Court granted the motion, and these appeals by the plaintiffs and the remaining defendants followed.

Accepting as true all of the foregoing factual allegations which are drawn from the amended complaint and additional submissions by the nonmoving parties, and according the nonmoving parties all favorable inferences that may be drawn from those submissions (*see Swift v New York Med. Coll.*, 25 AD3d 686, 687-688 [2006]), the plaintiffs may well be correct in asserting that the City and the Department mishandled the developing situation at the school. In scheduling testing, for example, the Department allegedly was guided by the fact that the incubation period for tuberculosis was between 8 and 12 weeks. But the former teacher was diagnosed with the disease in August, raising the possibility that he was already a carrier of the disease during the spring 2002 semester while he was still teaching. Yet, the Department did not administer tests immediately on his former students, opting instead to wait several more weeks, allowing at least some, and perhaps many, of those individuals to return to school and come into contact with other students and school personnel. Nevertheless, even if the City and the Department were shown, in hindsight, to have exhibited poor judgment, they are not liable to the plaintiffs in the circumstances of this case.

At the outset, the plaintiffs contend that the City and the Department are not shielded by governmental immunity because their negligence stems from a failure to perform "largely ministerial" tasks. Although it is true that a ministerial act may subject a municipality to liability for negligence and is not protected by governmental immunity (*see Lauer v City of New York*, 95 NY2d 95, 99 [2000]; *Tango v Tulevech*, 61 NY2d 34, 40-41 [1983]), we disagree that the allegations in the amended complaint make out a ministerial wrong. To the contrary, the investigation of a possible outbreak of tuberculosis in a school calls for the exercise of discretion and judgment by city and department officials and cannot be characterized as ministerial (*see* 10 NYCRR 2.6 [a] [upon receiving report of a case of communicable disease, health officer required to "make such an investigation as the circumstances may require for the purpose of verifying the diagnosis, ascertaining the source of infection and discovering contacts and unreported cases"]; NY City Health Code [24 RCNY] § 11.47 [b] [Department may require

testing of household and nonhousehold contacts of a case of active tuberculosis]). And the rule of governmental immunity is that, absent proof of a special relationship between the plaintiff and the municipality (*see Kovit v Estate of Hallums*, 4 NY3d 499, 506 [2005]), "when official action involves the exercise of discretion, the [municipality] is not liable for the injurious consequences of that action even if resulting from negligence or malice" (*Tango v Tulevech, supra* at 40; *see Kelleher v Town of Southampton*, 306 AD2d 247, 248 [2003]). While the existence of a special relationship depends on the facts, "a plaintiff has a heavy burden in establishing such a relationship" and, as a result, most such claims fail and are dismissed as a matter of law (*Pelaez v Seide*, 2 NY3d 186, 199 n 8 [2004] [and cases cited therein]).

> "A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation" (*Pelaez v Seide, supra* at 199-200).

As to the first, "[t]o form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action" (*id.* at 200; *Lauer v City of New York, supra* at 100-101). Contrary to the plaintiffs' contention here, neither the New York City Health Code nor the New York State Sanitary Code creates a private right of action in favor of persons at risk of contracting tuberculosis or other reportable or communicable diseases (*see generally* NY City Health Code [24 RCNY] art 11; 10 NYCRR part 2; *cf. Candelario v Teperman*, 15 AD3d 204, 205 [2005]; *Ellis v Peter*, 211 AD2d 353, 357-358 [1995]). Thus, assuming that the Department failed to comply with applicable laws and regulations in its investigation, that failure, in and of itself, does not provide a basis to establish the requisite special relationship. The laws and regulations of this State pertaining to the control of reportable or communicable diseases were enacted to protect the public in general, and not a particular class of persons such as schoolchildren or teachers. Stated otherwise, they "were intended to benefit the injured [plaintiffs], but in the broad sense of protecting all members of the general public similarly situated" (*O'Connor v City of New York*, 58 NY2d 184, 190 [1983]). Thus, the plaintiffs have failed

to plead the existence of a special relationship through breach of a statutory duty.

As to the second way of forming a special relationship, viz., by the municipality's voluntary assumption of an affirmative duty and the plaintiffs' justifiable reliance on the municipality's undertaking, four elements must be shown:

> "(1) an assumption by a municipality, through promises or actions, of an affirmative duty to act on behalf of the injured party; (2) knowledge on the part of a municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Pelaez v Seide, supra* at 202; *see Laratro v City of New York*, 8 NY3d 79 [2006]; *Kovit v Estate of Hallums, supra* at 506-507; *Lauer v City of New York, supra* at 102; *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]).

Here, the plaintiffs have failed to plead any type of direct contact between themselves and the City or the Department on which justifiable reliance may be predicated (*see Laratro v City of New York, supra* at 83; *Kovit v Estate of Hallums, supra* at 507). Indeed, the heart of their claim is that the City and the Department *failed* to contact them in a timely manner regarding the possibility of a tuberculosis outbreak. While there undoubtedly was contact between the Department and at least some of the plaintiffs in the course of the Department's investigation in September, October, and November of 2002, that contact occurred *after* the alleged wrongs had already been committed, and are therefore irrelevant to the plaintiffs' claims.

Admittedly, there are factual allegations in the record of prior direct contacts between the Department and the school principal, which, in theory, could form the basis of a "special relationship" giving rise to a right of contribution in favor of the school (*see Garrett v Holiday Inns*, 58 NY2d 253 [1983]). But neither the pleadings nor the additional opposition papers tendered by the school set forth facts sufficient to establish either that the City or the Department voluntarily assumed an affirmative duty or that it had knowledge that inaction could lead to harm.

In order for the City or the Department to have voluntarily assumed an affirmative duty, they must be shown to have voluntarily agreed to do something *they were not already obligated by law to do*. Contrary to the contention of the plaintiffs and the school, the failure to perform a statutory duty, or the

negligent performance of that duty, cannot be equated with the breach of a duty voluntarily assumed (*see Pelaez v Seide, supra* at 202-203). Here, the record is devoid of evidentiary facts suggesting that the City or the Department voluntarily undertook any obligation beyond what they were already required to do, i.e., investigate a possible outbreak of tuberculosis pursuant to the New York City Health Code and the State Sanitary Code.

Moreover, to show that the City or the Department had knowledge that inaction could lead to harm, the plaintiffs or the school would have to plead facts sufficient to show that the City and the Department were "clearly on notice of palpable danger, as where it is so obvious that a layman would ascertain it without inquiry" (*Kovit v Estate of Hallums, supra* at 507-508). This standard is an exacting one. For example, in *Lazan v County of Suffolk* (4 NY3d 499, 507-508 [2005]), a companion case to *Kovit v Estate of Hallums* (*supra*), the plaintiff pulled his car over to the shoulder of the Long Island Expressway. When a police cruiser arrived at the scene, the driver informed the officer that "he had chest pains and was not feeling well" (*Lazan v County of Suffolk,* 4 NY3d at 507). The officer nevertheless directed him to move his car to the nearest service station. The plaintiff did as instructed, but soon lost control of the vehicle and sustained serious injuries when he drove into a guardrail and a telephone pole. The Court of Appeals, noting that the officer could not be expected "to make a refined, expert medical diagnosis of a motorist's latent condition" (*id.* at 508), held that the plaintiff's complaints of chest pain and "not feeling well" were insufficient to place the municipality on notice that the plaintiff was too ill to drive (*id.*).

Here, the amended complaint alleged that the Department knew, in August 2002, that a former teacher at the school, who would *not* be returning to teach in the fall, had been diagnosed with tuberculosis. No other confirmed cases involving students or school personnel were known at that time. While the risk of further, undiagnosed tuberculosis cases was real, there is no allegation that the City or the Department ignored that risk. Rather, the plaintiffs and the school allege only that the City and the Department *did not act quickly enough* in light of the circumstances. We cannot conclude, however, that the risk of undiagnosed tuberculosis cases at the school amounted, under the facts alleged in the amended complaint, to a danger "so obvious that a layman would ascertain it without inquiry" (*Kovit v Estate of Hallums, supra* at 508).

As to the third and final way a special relationship may be formed, liability founded on a municipality's assumption of positive direction and control in the face of a known, blatant, and dangerous safety violation has been recognized only in rare circumstances, as when a municipality, having actual knowledge of a blatant violation of safety laws, nevertheless provides affirmative assurances of safety on which the injured plaintiff relies (*see Garrett v Holiday Inns, supra* [town, having actual knowledge of fire and safety law violations, nevertheless affirmatively certified the premises as safe]; *Smullen v City of New York*, 28 NY2d 66 [1971] [inspector gave verbal assurances to worker that an unshored trench was safe]). The municipality's failure to act in the face of a hazard—even a blatantly dangerous one, such as a disabled car stalled in the middle of a highway on a moonless, foggy night—is insufficient, in and of itself, to establish a special relationship under this test (*see Pinkney v City of New York*, 50 AD2d 928 [1975], *affd* 40 NY2d 1004 [1976]; *see also De La Paz v City of New York*, 294 AD2d 327 [2002]). The municipality must somehow *affirmatively act* to place the plaintiff in harm's way, as by giving assurances that the situation is safe when in fact it is not, thereby inducing the plaintiff to embark on a dangerous course he or she would otherwise have avoided. The facts alleged in the amended complaint do not fit within the limited ambit of this exception.

While it would have been unlawful, for instance, to permit a student or teacher *diagnosed* with active tuberculosis to attend the school (*see* NY City Health Code [24 RCNY] § 11.01 [e]; § 11.47 [c]), the Department did not do so here. The only known case of tuberculosis, from August 2002 until October 2002, was that of the former teacher, who did not return to the school after his diagnosis. The situation faced by the City and the Department in August 2002 therefore was not of a "blatant and dangerous safety violation" (*Pelaez v Seide, supra* at 203), but of an unknown—though potentially serious—health risk. Moreover, the plaintiffs do not allege that the Department ever falsely represented to anyone that the school was, in fact, safe and disease-free. Rather, the Department allegedly said nothing to persons potentially at risk, and took no steps to stop them from returning to the school while the investigation was pending. Such conduct is insufficient to establish a special relationship necessary for municipal liability.

In sum, we find that the allegations against the City and the Department in the amended complaint and in the cross claims,

even when accepted as true, do not establish the existence of a "special relationship" between the City or the Department, on the one hand, and any of the plaintiffs or the school defendants on the other. Thus, the amended complaint and the cross claims fail to state a viable cause of action against the City or the Department and therefore were properly dismissed insofar as asserted against them.

The appellants' remaining contentions are without merit.

Accordingly, the appeal by the defendants Roman Catholic Diocese of Brooklyn, Our Lady of Lourdes School, Michael Pizzingrillo, Mark Kruse, and William A. Smith, from so much of the order as granted that branch of the motion of the defendants City of New York and New York City Department of Health and Mental Hygiene which was to dismiss the complaint insofar as asserted against the defendants City of New York and New York City Department of Health and Mental Hygiene should be dismissed, as those defendants are not aggrieved by the portion of the order, and the order should be affirmed insofar as appealed from.

PRUDENTI, P.J., MASTRO and KRAUSMAN, JJ., concur.

Ordered that the appeal by the defendants Roman Catholic Diocese of Brooklyn, Our Lady of Lourdes School, Michael Pizzingrillo, Mark Kruse and William A. Smith from so much of the order as granted that branch of the motion of the defendants City of New York and the New York City Department of Health and Mental Hygiene which was to dismiss the complaint insofar as asserted against them is dismissed, as those defendants are not aggrieved by that portion of the order (see CPLR 5511); and it is further,

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendants City of New York and New York City Department of Health and Mental Hygiene payable jointly by the plaintiffs and by the defendants Roman Catholic Diocese of Brooklyn, Our Lady of Lourdes School, Michael Pizzingrillo, Mark Kruse and William A. Smith.