■  HAMIDU BAWA et al., Respondents, v CITY OF NEW YORK et al., Appellants. [942 NYS2d 191]—

In an action, inter alia, to recover damages for wrongful death, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Flug, J.), entered April 22, 2011, as denied those branches of their cross motion which were for summary judgment dismissing the first, second, third, fourth, fifth, sixth, and eighth causes of action in their entirety.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the defendants' cross motion which were for summary judgment dismissing the first, second, third, fourth, fifth, sixth, and eighth causes of action in their entirety are granted.

This action arises from a triple murder and suicide which took place at the home of Sonia Jacinth Taylor (hereinafter the decedent). The plaintiffs are the administrator of the decedent's estate, and the decedent's younger son. On numerous occasions between May 2006 and April 16, 2007, the police arrived at the decedent's house in response to her telephone calls to the 911 police emergency number concerning domestic incidents involving her older son, Jimmie Lee Dawkins, who lived with the decedent. However, the decedent never sought an order of protection against Dawkins. On April 18, 2007, Dawkins, who was then 20 years old, shot and killed the decedent, her companion, and the companion's health aide before killing himself.

The complaint alleges, inter alia, that the New York City Police Department negligently failed to arrest Dawkins on the prior occasions when officers responded to 911 calls, failed to follow up with the decedent about her domestic situation despite her repeated reports of incidents involving Dawkins, and failed to promptly respond to the decedent's final 911 call on April 18, 2007. The Supreme Court denied the defendants' cross motion for summary judgment dismissing the complaint except to the extent of dismissing "the plaintiffs' punitive damages claims" and "the plaintiffs' causes of action for the negligent infliction of emotional distress with respect to the [infant plaintiff] and for constitutional violations." The defendants appeal, and we reverse the order insofar as appealed from.

Recently, in *Valdez v City of New York* (18 NY3d 69 [2011]), the Court of Appeals considered a claim by a woman who was shot by her estranged boyfriend, alleging negligent failure to provide adequate police protection. Noting that the provision of police protection is a classic governmental function, the Court stated that the case "potentially implicate[d] two separate but well-established grounds for a municipality to secure dismissal of a tort claim brought against it by a private citizen injured by a third party" (*id.* at 75). The first ground upon which the municipality could be entitled to dismissal was the lack of special duty owed to the injured party, beyond that owed to the public at large. The second ground was the defense of governmental function immunity, which "shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions," even if the plaintiff is otherwise able to establish all the elements of a tort claim, including the existence of a duty owed to the injured party (*id.* at 76). "[W]hen both of these doctrines are asserted in a negligence case, the rule that emerges is that '[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general' " (*id.* at 76-77, quoting *McLean v City of New York*, 12 NY3d 194, 203 [2009]).

Here the defendants established that there was no special duty owed to the decedent by the police, and, in opposition, the plaintiffs failed to raise a triable issue of fact. A duty to exercise reasonable care owed to the injured person may arise where there is a special relationship between the injured person and the municipality (*see Pelaez v Seide*, 2 NY3d 186, 198-199 [2004]). Such a relationship can occur "when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; [or] when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or . . . when [it] assumes positive direction and control in the face of a known, blatant, and dangerous safety violation" (*id.* at 199-200).

The plaintiffs' claim that the City of New York violated a statutory duty owed to her because it failed to adhere to requirements of the Family Protection and Domestic Violence Intervention Act of 1994 must be rejected since recognition of a private right of action under that Act would not be consistent with the legislative scheme (*see McLean v City of New York*, 12 NY3d at 200; *Pelaez v Seide*, 2 NY3d at 199-200). Nor does the record support the conclusion that a special relationship existed based upon an affirmative duty undertaken by the police department upon which the decedent justifiably relied.

With respect to those incidents which occurred before April 18, 2007, the defendants made a prima facie showing that the police did not assume an affirmative duty to act on the plaintiffs' behalf, and, in opposition, the plaintiffs failed to raise a triable issue of fact (*see Yearwood v Town of Brighton*, 101 AD2d 498, 501 [1984], *affd* 64 NY2d 667 [1984]). Regarding the events of April 18, 2007, even assuming that the 911 operator's statement to the decedent on that day that "they are on their way, Ma'am," sufficed to satisfy the requirement of "an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured" (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]), nevertheless it cannot be concluded that the decedent relied to her detriment on that assurance. To be sure, when the decedent placed her 911 call on April 18, 2007, she undoubtedly hoped that the police would arrive quickly and prevent injury to herself at the hands of her son. However, as stated by the Court of Appeals in *Valdez*, to conclude that the decedent justifiably relied on the statement by the 911 operator: "would conflate two separate elements of the special relationship test because proof that a promise was made would simultaneously fulfill both the 'promise' and 'justifiable reliance' elements of the four-part test . . . Although, in a colloquial sense, we should be able to depend on the police to do what they say they are going to do—and no doubt the police have an obligation to attempt to fulfill that trust—it does not follow that a plaintiff injured by a third party is always entitled to pursue a claim against a municipality in every situation where the police fall short of that aspiration. The element of justifiable reliance must be assessed through the prism of reasonableness and liability will not always extend to a municipality for injuries caused by the violent acts of a third party" (*Valdez v City of New York*, 18 NY3d at 83-84).

In any event, the complaint also was subject to dismissal inasmuch as the defendants are "immune from liability for conduct involving the exercise of discretion and reasoned judgment" (*Arias v City of New York*, 22 AD3d 436, 437 [2005]; *see Mon v City of New York*, 78 NY2d 309 [1991]). The defendants established that the conduct of the police officers throughout the course of their interaction with the decedent's family was undertaken in the exercise of reasoned professional judgment of the officers, and was not inconsistent with accepted police practice. Accordingly, such conduct cannot serve as a basis for municipal liability (*see Lauer v City of New York*, 95 NY2d 95, 99 [2000]; *Tango v Tulevech*, 61 NY2d 34, 41 [1983]; *Arias v City of New York*, 22 AD3d at 437). In opposition to the defendants' prima facie showing on the issue of immunity, the plaintiffs failed to raise a triable issue of fact.

The plaintiffs' remaining contentions are without merit.

Accordingly, the Supreme Court should have granted those branches of the defendants' cross motion which were for summary judgment dismissing the first, second, third, fourth, fifth, sixth, and eighth causes of action in their entirety. Balkin, J.P., Leventhal, Roman and Sgroi, JJ., concur. **[Prior Case History: 31 Misc 3d 1210(A), 2011 NY Slip Op 50553(U).]**