Manhattan Woods Enters., LLC v County of Rockland (2024 NY Slip Op 04384)

Manhattan Woods Enters., LLC v County of Rockland

2024 NY Slip Op 04384

Decided on September 11, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 11, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
LARA J. GENOVESI
LOURDES M. VENTURA, JJ.

2020-04201
 (Index No. 33581/15)

[*1]Manhattan Woods Enterprises, LLC, et al., appellants,
v
County of Rockland, et al., respondents.

Daniel M. Kolko, White Plains, NY, for appellants.
Harris Beach, PLLC, White Plains, NY (Darius P. Chafizadeh, Mathew T. Dudley, and Brian D. Ginsberg of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for injury to property, the plaintiffs appeal from an order of the Supreme Court, Rockland County (Robert M. Berliner, J.), dated April 30, 2020. The order granted the defendants' motion for summary judgment dismissing the complaint and denied the plaintiffs' cross-motion pursuant to CPLR 3124 to compel the defendants to comply with certain discovery demands.
ORDERED that the order is affirmed, with costs.
The plaintiff Manhattan Woods Enterprises, LLC, is the owner of a golf course in Rockland County, and the plaintiff Manhattan Woods Golf Club, LLC, operates the golf course. The defendants are County of Rockland and County of Rockland Drainage Agency (hereinafter the Agency).
The Agency was created by the Rockland County Stream Control Act (L 1975, ch 846; hereinafter the Stream Control Act) to regulate streams in the County and to remove obstructions to those streams. The duties of the Agency, as set forth in Rockland County Code § 353-4(A), include taking "all possible action to protect against redirection, degradation, encroachment or the impairment of the flow of County streams, and to preserve the capacity and proper function of the one-hundred-year floodplain and County streams." Pursuant to that authority, the County enacted a "Stream Maintenance Program," whereby there shall be on-site maintenance reviews and inspections of streams twice a year to "determine if the streams are still within their bounds, if there is any unusual erosion, if there are any trees or garbage in the streams that have to be cleaned out, or if there is any ponding, which would cause mosquito infestation, or any other unusual item which would cause pollution, health hazard or damage or danger" (id. § 53-5[C][2]).
In December 2015, the plaintiffs commenced this action, inter alia, to recover damages for alleged injuries their property sustained as a result of flooding and erosion of the Nauraushaun Brook, which runs through the plaintiffs' property. In their answer, the defendants asserted, among other things, that they did not owe a special duty to the plaintiffs. The defendants moved for summary judgment dismissing the complaint, arguing, inter alia, that the Stream Control Act and the Rockland County Code provisions in issue (hereinafter collectively the stream [*2]legislation) did not create a private right of action. The plaintiffs cross-moved pursuant to CPLR 3124 to compel the defendants to comply with certain discovery demands. The Supreme Court granted the defendants' motion and denied the plaintiffs' cross-motion, concluding (1) that there was no private right of action, either express or implied, and (2) that the defendants' duties were governmental in nature, and therefore, the defendants could not be held liable to the plaintiffs in the absence of a special relationship, which did not exist here. The court determined that the defendants were acting strictly in a governmental function and not in a proprietary function. The plaintiffs appeal.
"A government entity performs a purely proprietary role when its 'activities essentially substitute for or supplement traditionally private enterprises'" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425, quoting Sebastian v State of New York, 93 NY2d 790, 793). "In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are 'undertaken for the protection and safety of the public pursuant to the general police powers'" (id.; see Turturro v City of New York, 28 NY3d 469, 477-478).
The plaintiffs contend that the maintenance of natural waterways in the County "essentially substitute[s] for or supplement[s] 'traditionally private enterprises'" (Sebastian v State of New York, 93 NY2d at 793, quoting Riss v City of New York, 22 NY2d 579, 581). However, although the maintenance and repair of human-made structures such as sewers and water mains is generally a proprietary function (see De Witt Props. v City of New York, 44 NY2d 417, 423; Trulio v Village of Ossining, 153 AD3d 577, 578; Gilberti v Town of Spafford, 117 AD3d 1547, 1548; D & D of Delhi, Inc. v Village of Delhi, 47 AD3d 1117, 1118), "no duty, ordinarily, rests upon the municipality, through whose boundaries a river, or stream, passes, in whole, or in part, to keep it in a safe condition, or free from obstructions, not of its own causing" (O'Donnell v City of Syracuse, 184 NY 1, 10-11; see Kimball Brooklands Corp. v County of Westchester, 144 AD3d 756; Mangusi v Town of Mount Pleasant, 19 AD3d 656). As noted by this Court in Legge Co. v City of Peekskill (210 AD2d 317, 317-318), "[t]he fact that a natural waterway was used as part of the municipal drainage system did not . . . establish any duty on the part of the City to take corrective action with respect to conditions situated entirely on the private lands of an adjoining property owner that allegedly caused the waterway to overflow," since there was no evidence adduced at trial that the municipality caused the build-up of debris.
The plaintiffs' basis for imposing a duty on the County is the stream legislation whereby the County assumed a duty to maintain a natural drainage system. Where a governmental entity assumes a duty because fulfilling that duty is best executed by the government and is undertaken without the thought of revenue, performance of that duty may be characterized as a governmental function (see Kochanski v City of New York , 76 AD3d 1050). Since it is "well settled that a municipal corporation is not liable for failure to restrain waters between banks of a stream or to keep a channel free from obstructions it did not cause" (Office Park Corp. v County of Onondaga, 64 AD2d 252, 258, affd 48 NY2d 765; see Mangusi v Town of Mount Pleasant, 19 AD3d 656), the defendants' assumption of a duty to maintain County streams is a governmental function.
In order to establish liability on the part of a governmental entity in the performance of a governmental function, the plaintiff must establish a special duty owed to the plaintiff. A special duty may arise in three situations: "'(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition'" (Ferreira v City of Binghamton, 38 NY3d 298, 310, quoting Applewhite v Accuhealth, Inc., 21 NY3d at 426; see Estate of M.D. v State of New York, 199 AD3d 754). Here, the plaintiffs contend that there was a special relationship because the stream legislation created a private right of action whereby the defendants assumed a statutory duty to them. "To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action" (Pelaez v Seide, 2 NY3d 186, 200). In this case, there is no claim of an express private right of action.
A private right of action "may be fairly implied when (1) the plaintiff is one of the [*3]class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme" (id.). No private right of action is implied where the legislation was enacted for the public at large and not for the plaintiffs' particular benefit (see Abraham v City of New York, 39 AD3d 21, 25; Ahmad v Nassau Heath Care Corp., 8 AD3d 512).
The plaintiffs argue that the stream legislation was enacted to benefit "landowners whose properties abut [C]ounty streams." However, the stream legislation had a broader function—to prevent flooding in the County generally and to prevent other conditions, such as ponding, which could result in mosquito infestation, affecting the public at large.
Moreover, the most crucial factor in determining whether there is a private right of action is whether the creation of such a right would be consistent with the legislative scheme (see Cruz v TD Bank, N.A., 22 NY3d 61, 70). The plaintiffs rely heavily upon the requirement that there "shall be regularly scheduled on-site maintenance reviews" and inspections of streams twice a year (Rockland County Code § 53-5[C][1]). However, subsequent language is precatory rather than mandatory. Reports of the inspections "should be rendered" (id. § 53-5[C][3]; see Matter of Moore, 16 AD2d 697), copies of which "shall be sent" to the County Legislature and County Executive, and "any work that is required to be done should be scheduled to be done" (Rockland County Code § 53-5[C][3]). Once scheduled, work "shall be completed within 30 days," but before such work is scheduled, there has to be a determination that it is required to be done based upon a report which "should be rendered," a copy of which "shall be sent" to the County Legislature and the County Executive (id.). Thus, the determination of what work should be done involved municipal discretion. Once an act is discretionary, there is no basis for liability based upon a statutory duty (see McLean v City of New York, 12 NY3d 194, 202; Bawa v City of New York, 94 AD3d 926, 927).
Under the circumstances, there was no special relationship between the plaintiffs and the defendants, and no basis to impose liability.
The plaintiffs' further contention that the defendants' motion for summary judgment was premature is without merit. "[A] grant of summary judgment is not premature merely because discovery has not been completed" (Arena v City of New York, 192 AD3d 737, 738 [internal quotation marks omitted]; see Valencia v Glinski, 219 AD3d 541, 546). "The plaintiff[s] failed to offer an evidentiary basis to suggest that additional discovery may lead to relevant evidence, or that facts essential to opposing the motion were exclusively within the knowledge and control of the defendant[s]" (Hope v Our Holy Redeemer R.C. Church, 219 AD3d 595, 596; see CPLR 3212[f]). For the same reason, the Supreme Court providently exercised its discretion in denying the plaintiffs' cross-motion pursuant to CPLR 3124 to compel disclosure (see Bank of N.Y. Mellon v Swift, 213 AD3d 624, 626; Deutsche Bank Natl. Trust Co. v Kingsbury, 171 AD3d 871, 872).
The parties' remaining contentions either are without merit or need not be addressed in light of our determination.
Accordingly, the Supreme Court properly granted the defendants' motion for summary judgment dismissing the complaint and denied the plaintiffs' cross-motion pursuant to CPLR 3124 to compel disclosure.
BARROS, J.P., CHAMBERS, GENOVESI and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court