OPINION OF THE COURT
Tom, J.P
In September 2006, plaintiff, the owner of a six-story hotel located at 610 West 111th Street in Manhattan, known as the Ellington Hotel, was issued a building permit by the Department *147 of Buildings (DOB) to construct a five-story addition on the roof of the hotel. In October, the DOB halted construction at the site and conducted an audit, issuing a list of objections to the work that had been performed.
In November 2006, the DOB notified plaintiff of its intent to revoke the permit based on the objections raised on the audit unless plaintiff demonstrated why the permit should not be revoked. In May 2007, the DOB revoked all permits and directed that all work cease. In June 2008, the DOB conducted a structural integrity assessment of the illegally altered building and concluded that due to improper construction, the “structural stability of the building [hotel] is affected,” and a “[l]ifesafety risk is present due to the lack of required egress from the building — accesses to the roof and exits from the roof.” The DOB issued an “Emergency Declaration” dated June 23, 2008, informing plaintiff that the “building, or [a] portion thereof, has been declared unsafe and in imminent peril,” that “because of the severity of the condition,” the structure “must be repaired or demolished immediately” and that “responsibility to take such action is yours.” The emergency declaration further states that the City would perform the necessary remedial work at plaintiffs expense if plaintiff failed to cure the defects. The New York City Department of Housing Preservation and Development (DHPD) sent plaintiff an “Urgent Notice,” dated July 14, 2008 advising that it would retain a contractor, at plaintiff’s expense, to cure the emergency condition unless plaintiff acted immediately. Plaintiff failed to respond, and DHPD engaged defendant Russo Demolition Inc. to conduct remedial work. Between August 18 and August 25, 2008, Russo Demolition undertook and completed the demolition of the steel structure erected on the roof of the premises.
On August 26, 2008, plaintiff commenced this action against Russo Demolition alleging trespass, conversion and negligence. The complaint has since been amended, first to add the municipal defendants and, again, to name a second Russo defendant, A. Russo Wrecking, Inc. (collectively, Russo). The second amended complaint asserts that on or about August 19, 2008, Russo, acting on behalf of the municipal defendants, unlawfully entered onto plaintiffs hotel property and removed the steel structure from the roof. The complaint further asserts that Russo failed to provide any evidence of its authority to remove the steel structure despite plaintiffs repeated requests.
As noted, the original complaint, which had alleged trespass and conversion, named only Russo Demolition as defendant. *148 Legal proceedings were initiated on August 21, 2008, when plaintiff applied for a temporary restraining order and preliminary injunction against any further entry onto its premises or removal of its property by Russo Demolition. The municipal defendants were added some seven months later, when the complaint was amended on March 17, 2009. The complaint assumed its present form when it was amended several months later to add a cause of action for negligence.
It may be fairly inferred from the second amended complaint that plaintiff alleges Russo lacked lawful authority to remove the steel structure from the roof of plaintiffs hotel because DHPD likewise lacked lawful authority to direct Russo to perform the necessary demolition work. However, the issue of lack of notice was first raised in plaintiffs opposition papers to defendant’s dismissal motion, which, relying on Calamusa v Town of Brookhaven (272 AD2d 426 [2000]) and Scott v Town of Duanesburg (176 AD2d 989 [1991]), advanced the theory that the municipal defendants’ failure to provide notice and opportunity to be heard before the demolition work was performed “is a violation of due process rights for which liability will attach” (internal quotation marks omitted). Therefore, by way of cross motion, plaintiff sought to amend the complaint to allege explicitly that the demolition work was performed “without providing to Plaintiff notice of the Municipal Defendants’ intent to demolish the steel structure and an opportunity to cure the existing condition, to the extent such condition was dangerous or unsafe.”
Defendants’ motion to dismiss asserted that the complaint fails to state a cause of action for conversion, trespass or negligence, arguing that absolute immunity extends to acts within the exercise of administrative discretion — here, the determination that removal of the steel structure was warranted. Furthermore, the municipal defendants alleged that plaintiff had received the requisite notice of the proposed removal of the dangerous offending structure by certified mail.
In opposition, plaintiff contended that it “never received such notice.” The opposing papers included the affidavit of Alan Lapes, the owner of the property, who stated, “I never received these notices. Moreover, no agent of California Suites Inc. ever signed any ‘certified mail’ receipt allegedly delivered with said notice.”
In reply, the City agencies furnished affidavits by their employees attesting to their regular business practice in issuing *149 and mailing official notices. They further produced a tracking notice from the United States Postal Service indicating that the certified mailing was signed for by one Samal Nur and had been delivered at 3:39 p.m. on July 18, 2008.
In further opposition to the motion (denominated “surreply”), plaintiff submitted another affidavit from Alan Lapes stating that “the Secretary of State was directed to forward process it accepted on behalf of the corporation to 610 West 111th Street” and that the Department of Buildings had previously “mailed all notices relating to the condition of the building to the 610 address.” Lapes did not deny that plaintiff maintains an office at 850 West End Avenue, where notices were sent by the municipal defendants; remarkably, he stated that plaintiff “has used the 850 address to receive financial and tax information from the Department of Finance in connection with the subject building . . . and for no other purpose.” Nor did Lapes offer any explanation why Samal Nur should not be regarded as plaintiffs agent or employee despite having signed for the certified mailing on behalf of plaintiff in that capacity. Nowhere in Lapes’s affidavit does he deny that Samal Nur was plaintiffs employee. The Lapes affidavit was accompanied by the affirmation of counsel raising, for the first time, the contention that notice of the proposed demolition was required to be given “in accordance with the civil practice law and rules of the state of New York” (citing Administrative Code of City of NY § 28-216.4).
This matter is now before us on plaintiffs appeal from the award of summary judgment dismissing the action as against the municipal defendants (CPLR 3211 [a] [7]), and the denial of plaintiffs cross motion for leave to amend the complaint yet again (CPLR 3025 [b]). The motion court held that plaintiff had received notice of the proposed demolition and that the municipal defendants were immune from liability for discretionary acts performed in an official capacity (2010 NY Slip Op 31256[U] [2010]).
Plaintiff cites Calamusa (272 AD2d 426) and Scott (176 AD2d 989), in support of its contention that its constitutional rights to due process were violated because the municipal defendants failed to provide notice to plaintiff of the demolition and an opportunity to cure the defective condition. Although the cited cases are facially similar to this matter, they involve different statutes and the particular factual and procedural context is unclear.
*150 In Calamusa, a case in which an injury to property was alleged, the Second Department stated:
“A municipality may demolish a building without providing notice and an opportunity to be heard if there are exigent circumstances which require immediate demolition of the building to protect the public from imminent danger. In this case, immediate action was not required and there was time to provide notice and an opportunity to be heard. Therefore, the failure to provide the same is a violation of due process rights for which liability will attach” (Calamusa, 272 AD2d at 427 [citations omitted]).
In Scott, as in the instant matter, the complaint alleged trespass, negligence and intentional destruction of property (but not conversion). The Third Department held that “defendant did not properly act according to its police powers in demolishing plaintiffs campsite structure because it failed to comply with plaintiffs statutory and due process rights to notice and an opportunity to be heard before the structure was declared unsafe” (Scott, 176 AD2d at 991). The Court rejected the defense of immunity, stating, “The decision to demolish without giving notice and an opportunity to be heard cannot be classified as a discretionary decision as fundamental due process compels the result. . . removing discretion” (id. at 992).
These cases both involve the issue alluded to by the second amended complaint — the lack of authority to exercise emergency powers without giving notice of the proposed demolition — but the result in each case appears to rest on the failure to give the plaintiff any notice at all that such action was imminent.
To satisfy the constitutional requirement of due process, notice need only be “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections” (Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]). The record amassed before the motion court amply demonstrates plaintiffs awareness that the condition of its building was regarded as unsafe by the DOB. Furthermore, notices issued by the Department prior to directing removal of the steel structure from plaintiffs premises were directed to an address where plaintiff concedes that it maintains an office, and a certified mailing receipt confirms that plaintiff received notice *151 that demolition was imminent. Thus, plaintiffs contrary contention that it did not receive reasonable notice of the proposed demolition is belied by the documentary evidence (CPLR 3211 [a] [1]), plaintiff’s purported constitutional challenge lacks substance, and its proceeding challenging the administrative action taken by the DOB is precluded because it is untimely as discussed below and, in any event, without evidentiary support in the administrative record (see Nole v Passidomo, 118 AD2d 326, 329 [1986] [record devoid of evidence that plaintiff submitted evidence at administrative level supporting claims or that she pursued administrative remedies though invited to do so]).
The record in this matter reflects that plaintiff, its agents and employees, were apprised of every aspect of the municipal defendants’ administrative actions taken in regard to the property. In late September 2006, plaintiff obtained a building permit to expand its hotel by adding a five-story addition to the roof of the building. In mid-October, the Department issued a stop-work order, followed by an audit of the building site, after which the Department sent an extensive list of objections to the project’s architect. A notice of intent to revoke the building permit was issued in late November, and the permit was ultimately revoked in May 2007.
A year later, two DOB representatives conducted an inspection of the premises, accompanied by Alan Lapes. The resulting special report dated June 19, 2008 found, among other items, that the requisite access to and egress from the roof were lacking because the doors from the stairs to the roof were blocked by the installed steel structures; the mandatory three-foot-six-inch-high parapet wall was partially demolished for the installation of the steel beams; and there were 18 outstanding DOB violations against the premises. The engineer’s report noted the building permit issued to plaintiff in this case anticipated that the structural steel for the proposed five-story addition would consist of “14-inch W-beams” that would “bear on the 13-inch existing exterior wall of the building.” Instead, the engineer observed that only 12-inch beams had been installed and that “the existing 8-inch parapet wall is being used as a bearing wall,” rather than the 13-inch exterior wall, the condition of which he noted to be “questionable due to weathering and mortar deterioration,” affecting the building’s structural stability. The engineer further noted, as a life-safety risk, that “both doors from the stair bulkhead to the roof and accesses to both fire escapes . . . are blocked by installed steel structures.” *152 Consequently, the Manhattan Borough Commissioner issued an emergency declaration dated June 23, 2008 that the building was “unsafe and in imminent peril,” informing plaintiff of its responsibility to immediately take remedial action or such work would be performed by the City at the owner’s expense.
A subsequent notice dated July 14, 2008 informed the owner that the DHPD “will engage a contractor to cure the emergency condition unless you act immediately to correct the condition.” This notice was sent by certified mail and signed for by Samal Nur. These 2008 notices, submitted by the municipal defendants in connection with their motion, were mailed to plaintiff at 850 West End Avenue in Manhattan. In support of the motion, the municipal defendants submitted documents sent to plaintiff at the 850 West End Avenue address. Included were notices sent by the Department of Finance, as well as copies of an indenture and a mortgage stating plaintiffs office address to be 850 West End Avenue. Also submitted was a copy of the building permit for the project showing that it was issued to Alan Lapes, identified as the general contractor and conducting business as Metro Maintenance Corporation. The certified mailing of notice of the imminent demolition (documented by a signed receipt and tracking notice), with plaintiffs admission that it maintains an office at the address where the mailing was received, together with other notices mailed to the same location, and evidence of the agencies’ mailing procedures establish due notice (see Matter of Cruz v Wing, 276 AD2d 307 [2000], lv denied 96 NY2d 702 [2001]), which the bare denial of plaintiffs principal is insufficient to rebut (see Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830 [1978]; Northern v Hernandez, 17 AD3d 285, 286 [2005]).
The substance of plaintiffs opposition to the dismissal motion was that the Department of Buildings made the determination to remove the steel structure on the roof of plaintiffs hotel and forwarded a memorandum to that effect to DHPD without first affording plaintiff notice. Between the time opposing papers and the surreply were filed, plaintiff changed its argument from an assertion that it received no notice of the proposed agency action to the assertion that it did not receive what it now contends is the proper notice of such action, that is, notice mailed to the address on file with the Secretary of State. While the lack of any notice implicates a constitutional violation of plaintiffs due process rights, the lack of proper notice merely implicates a “violation of lawful procedure” (CPLR 7803 [3]), for which *153 plaintiff is required to seek relief in a special proceeding (CPLR 7801).
By invoking a constitutional basis for its claim against the municipal defendants, the complaint seeks to obviate plaintiffs failure (1) to pursue its administrative remedies and (2) to observe the time limitation of CPLR 217 (1) applicable to a proceeding against a body or officer (CPLR 7801). As noted, the complaint was amended to add the municipal defendants seven months after the action was instituted, and their answer to that complaint asserts, as a first affirmative defense, that plaintiff “failed to timely join the City as a party to this action.” While the tort action may have been timely commenced against the municipal defendants under the precedent established in Matter of First Natl. City Bank v City of N.Y. Fin. Admin. (36 NY2d 87 [1975]), the form in which an action is brought is not controlling; rather, “ ‘it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought’ ” (New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 201 [1994], quoting Solnick v Whalen, 49 NY2d 224, 229 [1980]).
As the Court of Appeals remarked, “[W]hen the claim is one against a governmental body or officer, the form of action that immediately springs to mind is a proceeding brought under CPLR article 78, a traditional, and surely the most common, vehicle for challenging a governmental decision or action” (McBarnette, 84 NY2d at 201). If, as plaintiff contends, its due process rights were violated by the absence of administrative notice of the proposed demolition of its property, its claim has a constitutional basis, and plaintiff is thereby relieved of the general requirement to proceed administratively (see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]). If, however, the constitutional claim fails (because it can be established that plaintiff had received administrative notice of the proposed demolition), the second amended complaint must then be read to allege that the City agencies exceeded their jurisdiction (CPLR 7803 [2]), or violated lawful procedure (CPLR 7803 [3]), in effecting the demolition of a portion of plaintiffs premises, subjecting the matter to the four-month period of limitation specified in CPLR 217. Since the municipal defendants were not named in the tort action until seven months after the administrative action complained of, the timeliness, and indeed the viability, of plaintiff’s claim rests on the sufficiency of the constitutional due process violation on which the plenary action depends.
*154 Thus, the issue before us is the legitimacy of plaintiffs position that it lacked notice of the pending administrative action so as to warrant the further amendment of the complaint to include the allegation that its due process rights were violated, and so avoid dismissal of the action on the ground that plaintiff is attempting to contest administrative action of which it had notice but to which it failed to respond. Logically, a party cannot be faulted for failure to challenge, administratively, proposed action of which it has no knowledge. By contrast, a party may not contest administrative action taken upon its default in appearance before an agency without offering a reasonable excuse for such default (see Matter of Cherry v New York City Hous. Auth., 67 AD3d 438, 439 [2009]). Nor is an administrative agency required to establish the validity of its actions where a petitioner, though afforded the opportunity, has declined to appear and contest those actions (see Matter of Barnes v Ratner, 57 NY2d 942, 944 [1982]; cf. Matter of Ifill v Fischer, 79 AD3d 1322, 1323 [2010]).
Since the record conclusively establishes that plaintiff received notice of the proposed demolition, its due process claim is without foundation. Divested of its constitutional predicate, the complaint merely alleges that the municipal defendants failed to follow proper procedure in arriving at the determination to demolish the steel structure erected on the roof of plaintiffs premises and, in view of that omission, exceeded their authority in undertaking the demolition work. As discussed, these issues must be raised in a special proceeding under CPLR article 78 (CPLR 7803 [2], [3]; 7804 [a]) subject to a four-month statute of limitations (CPLR 217; see Press v County of Monroe, 50 NY2d 695 [1980]). Because this action was not commenced against the municipal defendants until seven months after the acts complained of, it is untimely and must be dismissed (Concourse Nursing Home v Perales, 219 AD2d 451 [1995], lv denied 87 NY2d 812 [1996], cert denied 519 US 863 [1996]). As noted by the Second Department in Noroian v City of Port Jervis (16 AD3d 392, 393 [2005], appeal dismissed 4 NY3d 881 [2005]), “[t]he plaintiff[ ] in this case could and should have commenced a CPLR article 78 proceeding to challenge the [agency’s] determination with respect to [its] property.”
It bears emphasis that permitting plaintiff to avoid the need to pursue and exhaust its administrative remedies by resorting to the simple expedient of refusing to respond to notice of pending administrative action and claiming a denial of due process *155 offends judicial policy (see Press, 50 NY2d at 704). It rewards plaintiff for its obduracy and defeats salutary purposes of the exhaustion rule which, as pertinent here, alleviates the burden on the courts to decide questions within an agency’s administrative expertise and enables the agency to prepare a sufficient record for judicial review that reflects its expertise and judgment (Watergate II Apts., 46 NY2d at 57). If the consequences of a refusal to appear before an administrative agency and comply with the procedure provided in CPLR article 78 can be so easily avoided, the courts will be unnecessarily burdened with administrative matters advanced as plenary actions on the basis of some supposed intrusion upon a constitutional right.
Due process is not a sword to be wielded offensively to thwart the legitimate government interest in ensuring public safety but a shield to guard against the unjustified taking of property. To rule that plaintiff should be given the opportunity to seek monetary damages for its intentional failure to appear in pursuance of its due process rights makes a mockery of the concept.
It is axiomatic that “discretionary municipal acts may never be a basis for liability, while ministerial acts may support liability only where a special duty is found” (McLean v City of New York, 12 NY3d 194, 202 [2009]). Discretionary acts “involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result” (Tango v Tulevech, 61 NY2d 34, 41 [1983]; see also Arteaga v State of New York, 72 NY2d 212 [1988]). Here, defendants’ determination that the situation constituted an emergency condition either under Administrative Code § 28-215.1 or § 28-215.4, is a discretionary act immune from liability (see Tango, 61 NY2d at 41; Catanzaro v Weiden, 188 F3d 56, 62-63 [2d Cir 1999]; Wantanabe Realty Corp. v City of New York, 315 F Supp 2d 375, 403 [SD NY 2003]). The mailing of the notices to 850 West End Avenue was reasonably calculated to inform plaintiff of defendants’ determination to demolish the structure and therefore comported with the requirements of due process (see Schroeder v City of New York, 371 US 208, 211 [1962]; Dextra v City of New York, 46 AD3d 328, 328 [2007]).
Finally, plaintiffs contention that Supreme Court erred in treating the municipal defendants’ application as a motion for summary judgment without first informing the parties (CPLR 3211 [c]; Mihlovan v Grozavu, 72 NY2d 506, 508 [1988]) is specious. The rule has no application where, as here, the parties’ *156 submissions indicate that they are “ ‘deliberately charting a summary judgment course’ ” (id., quoting Four Seasons Hotels v Vinnik, 127 AD2d 310, 320 [1987]). A salient feature of our judicial system is that parties are accorded great latitude in how they conduct litigation and “may to a large extent chart their own procedural course through the courts” (Stevenson v News Syndicate Co., 302 NY 81, 87 [1950]; see also Mitchell v New York Hosp., 61 NY2d 208, 214 [1984]; Matter of Malloy, 278 NY 429 [1938]). They “may fashion the basis upon which a particular controversy will be resolved” (Cullen v Naples, 31 NY2d 818, 820 [1972]), including “the law to be applied” (Martin v City of Cohoes, 37 NY2d 162, 165-166 [1975]). While the parties are largely free to choose how to proceed, “they are bound by the consequences attendant upon the exercise of that prerogative” (Sean M. v City of New York, 20 AD3d 146, 150 [2005]; Katz v Robinson Silverman Pearce Aronsohn & Berman, 277 AD2d 70, 73 [2000]).
Here, both sides submitted evidentiary material to the motion court bearing on the question of notice. The municipal defendants provided extensive documentary evidence and affidavits to show that notices were mailed and received by plaintiff, and plaintiff submitted multiple affidavits by its principal disputing the same. Plaintiff even went so far as to intimate, in its surreply, that the motion must be denied because the documentary evidence was contradicted by the affidavit of Alan Lapes, thereby precluding summary disposition. Having laid bare their proof on the issue of notice by presenting opposing evidence and disputing its import and effect, the parties clearly invited the motion court to resolve the question based on their submissions (see e.g. Mic Prop. & Cas. Ins. Corp. v Custom Craftsman of Brooklyn, 269 AD2d 333 [2000]). While the municipal defendants’ motion was directed at the sufficiency of the pleadings (CPLR 3211), the parties treated it as an application seeking summary disposition on the factual question of notice (CPLR 3212). Under these circumstances, a court is not required to adhere to the notice requirement of CPLR 3211 (c) before treating the motion as one for summary judgment, and plaintiff cannot complain that the notice issue was summarily resolved (see e.g. Ting Kou Cheng v Brewran Vil. Hudson Assoc., 180 AD2d 519, 520 [1992]).
Accordingly, the order of the Supreme Court, New York County (Cynthia S. Kern, J.), entered May 24, 2010, which granted the City defendants’ motion to dismiss the complaint as *157 against them, and denied plaintiffs cross motion to amend the complaint, should be affirmed, without costs.
Saxe, Sweeny, Richter and Manzanet-Daniels, JJ., concur.
Order, Supreme Court, New York County, entered May 24, 2010, affirmed, without costs.