Alfin v State of New York (2023 NY Slip Op 23427)

[*1]

Alfin v State of New York

2023 NY Slip Op 23427

Decided on December 31, 2023

Court Of Claims

Chaudhry, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 31, 2023
Court of Claims

Kathleen Alfin and Denis L. Alfin, Claimants,

against
The State of New York,[FN1] Defendant.

Claim No. 134222

For Claimants:
FELLOWS HYMOWITZ RICE, PC
By: Matthew F. Rice, Esq.
For Defendant:
LETITIA JAMES, New York State Attorney General
By: Terrance K. DeRosa, Assistant Attorney General

Zainab A. Chaudhry, J.

In this personal injury action, claimants Kathleen and Denis Alfin allege that a New York State Trooper's negligent execution of a traffic stop on a vehicle operated by a nonparty driver caused them to collide with the stopped vehicle as they were traveling in their car on the same highway. The resulting accident caused Kathleen to sustain significant physical injuries; Denis' claims are predominantly derivative in nature.
Defendant 
has moved for summary judgment dismissing the claim. Defendant first argues that the trooper was operating an emergency vehicle engaged in an emergency operation and, thus, under Vehicle and Traffic Law (VTL) § 1104 (e), defendant cannot be held liable for the trooper's conduct unless he acted recklessly. To that end, defendant contends that the claim must be dismissed because the trooper's actions were not reckless as a matter of law. Next, defendant argues that even if the trooper acted recklessly, the claim must be dismissed because defendant is protected by governmental function immunity and claimants cannot establish that defendant owed them a special duty.[FN2]
Claimants oppose the motion, asserting there are triable [*2]issues of fact as to the questions whether the trooper was engaged in an emergency operation and acted recklessly, as well as whether the trooper's actions were covered by governmental function immunity or defendant owed claimants a special duty. For the reasons stated below, the motion is denied.
The claim alleges that on October 30, 2019, at approximately 7:15 p.m., claimants were traveling eastbound on Interstate 84, a two-lane highway, near the town of Southeast, New York. Denis was driving, and Kathleen occupied the passenger seat. According to the claim, as Denis was traveling in the right lane, he saw a state police cruiser with its flashing lights activated pulled over on the right shoulder of the highway (see Claim, ¶ 3). Believing that the trooper must have had another vehicle pulled over in front of the police cruiser, Denis moved claimants' vehicle from the right lane into the left lane in accordance with the State's Move Over Law (see id.; VTL § 1144-a [a]). In his deposition, Denis further explained that the road conditions were wet, and that he also reduced his speed while moving to the left (see Affirm in Supp of Mot, Exh G, at 18-19). Denis also testified that he saw a tractor trailer moving from the left into the right lane at that same time (see id. at 19). After moving over into the left lane, Denis testified that he then almost immediately saw two things at the same time: the trooper standing outside of the police vehicle flickering a handheld flashlight back and forth, and another car stopped just ahead of him (see id.). Denis stated that he attempted to brake but could not stop claimants' vehicle before it collided into the back of the car stopped in front of him (see id.).
Conflicting accounts of the events leading up to the accident were given by Trooper John DiRusso, the officer who was operating the state police vehicle, and nonparty Terryann Smith, the driver of the other car involved in the accident.
According to the deposition testimony of DiRusso, submitted by defendant in support of the motion, the road conditions were dry and it was not raining at the time of the accident (see Affirm in Supp of Mot, Exh D, at 20). DiRusso testified that he was patrolling I-84 for general highway safety and observed Smith's vehicle in the left lane of the highway "obstructing the flow of traffic," causing other vehicles to make "evasive maneuvers" to get ahead of her car (id. at 15-16). He further observed that Smith was "unable to maintain [her] lane" and believed that she may have been impaired (id. at 16). DiRusso explained that he got behind Smith's car and eventually activated his emergency lights to effectuate a traffic stop (see id.). DiRusso stated that, although he "attempted to slow both lanes of travel so that [Smith] . . . would safely pull off to the right side of the roadway," Smith nevertheless came to a complete stop in the left lane of travel (id.). DiRusso further stated that there was no shoulder on the left side of the highway and that Smith was not pulled over onto the grass (id. at 19). Having stopped approximately 15 feet behind her, DiRusso testified that he first gave Smith multiple directives using his public address system, commanding her to move to the right shoulder immediately (see id. at 16-17, 19-20). After Smith failed to move, DiRusso stated that he exited his vehicle and approached Smith's driver-side window and told her to move immediately to the right shoulder once he signaled with his siren (see id. at 17-18). DiRusso explained that he returned to his vehicle and, as he was monitoring the flow of traffic, sounded the siren multiple times before Smith eventually began to move into the right lane (see id. at 17). According to DiRusso, he followed behind her and both cars were fully in the right lane when, suddenly, Smith jerked her vehicle back into the left lane and stopped and put her vehicle in park, as DiRusso moved his vehicle into the right shoulder (see id. at 17, 20-23). DiRusso testified that, at that point, he was not "able to maneuver [his] troop car safely to get behind [Smith]" (id. at 25; see also id. at 27, 29-30), and so he exited his [*3]vehicle and began flashing his handheld flashlight at her from the right side of the roadway and shouting verbal commands for her to move into the shoulder (see id. at 25, 33). DiRusso stated that he was also able to stop a tractor trailer that was traveling in the right lane by using his flashlight to get the driver's attention (see id. at 33-34).
Smith told a different story. Smith was deposed twice in connection with this incident—once in the instant claim, and once in a related Supreme Court action brought by the Alfins against Smith,[FN3]
and both transcripts were submitted by defendant in support of the motion. Smith testified at her earlier Supreme Court deposition that she was not "going fast" but traveling at least 50 miles per hour in the left lane before DiRusso stopped her (Affirm in Supp of Mot, Exh F, at 33). According to Smith, it was raining heavily at the time of the accident (see id. at 26). When DiRusso first activated his lights, Smith testified that she pulled over and parked in "a little shoulder" on the left—not the left lane as DiRusso testified—and DiRusso stopped behind her (id. at 23; see also id. at 29, 35-36, 51, 53). She testified that her car was at least partially on a grassy area (see id. at 24), which she believed was a safe location to stop, and that it would not have been safe to pull over to the right due to cars traveling in the right lane (see id. at 28, 37-38, 50). According to Smith, DiRusso approached her vehicle on the driver's side, was "screaming and carrying on," and instructed her to follow his vehicle to the right shoulder (id. at 29; see id. at 38). She stated that DiRusso then returned to his vehicle and "went all the way over to the right" ahead of her while she "stayed over on the left" (id. at 29; see id. at 38). Smith explained that she "couldn't move over" into the right lane (id. at 32) because she saw the tractor trailer coming and believed it would have been unsafe (see id. at 32, 62, 82). She elaborated that she "tried a little bit" to move to the right, but then after seeing the tractor trailer, she "went back over" to the left (id. at 44; see also id. at 61, 82-84).
Notably, there are discrepancies in the testimony Smith gave during her Supreme Court deposition as well as her Court of Claims deposition with respect to any attempt to move to the right and the position of her vehicle when the accident occurred. For example, in her Supreme Court deposition, Smith testified that she had put the car in drive and had started to move away from the left shoulder toward the right, but after entering the left lane she "had to go back over" to the left shoulder upon seeing the tractor trailer (id. at 82-84). At that point, she stated her vehicle was hit from behind after returning to the left shoulder (see id. at 85), but earlier in her testimony Smith had stated that she was in the left lane at the moment of impact (see id. at 29). Further, in her subsequent deposition in this action, Smith testified that she stayed parked in the left shoulder the entire time and never moved her car at all (see Affirm in Supp of Mot, Exh E, at 24-26, 28-29, 35), further contradicting DiRusso's testimony.
Smith ultimately received a traffic ticket issued by Trooper DiRusso, charging her with a violation of VTL § 1181 (a) for operating her vehicle too slowly (see Affirm in Supp of Mot, Exh D, at 45; id., Exh F, at 41).[FN4]

Summary judgment is a "drastic remedy" and may be granted only when no triable issues of fact exist (Andre v Pomeroy, 35 NY2d 361, 364 [1974]; see CPLR 3212). A movant bears the initial burden of establishing the right to judgment as a matter of law by tendering sufficient evidence, in admissible form, demonstrating the absence of material issues of fact from the case (see Matter of Eighth Jud. Dist. Asbestos Litig., 33 NY3d 488, 496 [2019], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see also Trustees of Columbia Univ. in the City of NY v D'Agostino Supermarkets, Inc., 36 NY3d 69, 73-74 [2020]). In this regard, conclusory assertions are insufficient to demonstrate the absence of any material issues of fact (see Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]). The failure to make the initial prima facie showing requires denial of the motion, "'regardless of the sufficiency of the opposing papers'" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez, 68 NY2d at 324). If the moving party has satisfied the prima facie obligation, however, the burden shifts and the party opposing the motion must demonstrate, also by admissible evidence, the existence of an issue of material fact (see Vega, 18 NY3d at 503, citing Alvarez, 68 NY2d at 324). At the summary judgment stage, the essence of the Court's function is "'issue-finding, rather than issue-determination'" (Ferrante v American Lung Assn., 90 NY2d 623, 630, quoting Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). And in determining a motion for summary judgment, "the evidence must be viewed in the light most favorable to the party opposing the motion" (Westinghouse Elec. Supply Co. v Brosseau & Co., 156 AD2d 851, 853 [3d Dept 1989]; see also Bill Birds, Inc. v Stein Law Firm, P.C., 35 NY3d 173, 179 [2020]; Vega, 18 NY3d at 503), and "'every available inference must be drawn in the [non-moving party's] favor'" (Eighth Jud. Dist. Asbestos Litig., 33 NY3d at 496 [alteration in original], quoting De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]).
VTL § 1104 grants the drivers of emergency vehicles "'privileges' to disobey certain traffic laws when they are 'involved in an emergency operation'" (Anderson v Commack Fire Dist., 39 NY3d 495, 501 [2023], quoting VTL § 1104 [a]). Those privileges are enumerated in VTL § 1104 (b), which states that a driver of such a vehicle may:
1. Stop, stand or park irrespective of the provisions of this title;
2. Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation;
3. Exceed the maximum speed limits so long as [they do] not endanger life or property;
4. Disregard regulations governing directions of movement or turning in specified directions
(VTL § 1104 [b] [1] - [4]). When drivers exercise one of these privileges during the course of an emergency operation, they are nevertheless required by VTL § 1104 (e) to operate the vehicle "with due regard for the safety of all persons" and are not protected "from the consequences of [their] reckless disregard for the safety of others." Section 1104 (e) thus establishes a reckless disregard standard of care "'for determining civil liability for damages resulting from the privileged operation of an emergency vehicle'" (Kabir v County of Monroe, 16 NY3d 217, 230 [2011] [ellipsis omitted], quoting Saarinen v Kerr, 84 NY2d 494, 500 [1994]). Under this standard, a claimant must show "evidence that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome" (Saarinen, 84 NY2d at 501 [internal quotation marks omitted]). Importantly, however, the reckless disregard standard does not apply to all injury-causing conduct committed by drivers [*4]of emergency vehicles engaged in emergency operations. Indeed, "[i]f the conduct causing the accident resulting in injuries and damages is not privileged under [VTL] § 1104 (b), the standard of care for determining civil liability is ordinary negligence" (Kabir, 16 NY3d at 230-231).
Initially, defendant has established, prima facie, that DiRusso was engaged in an "emergency operation" within the meaning of the VTL and claimants failed to raise a triable issue of fact in opposition. As defendant notes, the definition of "emergency operation" includes "[t]he operation, or parking, of an authorized emergency vehicle, when such vehicle is . . . pursuing an actual or suspected violator of the law" (VTL § 114-b). There is no dispute that the police vehicle operated by DiRusso at the time of the accident was an "authorized emergency vehicle" (VTL § 101). Further, there is no genuine dispute in the record that DiRusso began following Smith and stopped her because he believed that she committed a traffic violation; notably, Smith was ultimately ticketed. Claimants argue that "[d]riving too slowly in the rain is hardly a criminal activity" (Claimants' Mem of Law in Opp to Mot, ¶ 14), but the statute is not limited to suspected criminal acts. Indeed, it is well established that a police officer's pursuit of a motorist for a suspected traffic violation qualifies as an emergency operation (see Thompson v City of New York, 210 AD3d 1031, 1033-1034 [2d Dept 2022]; see also Lacey v City of Syracuse, 144 AD3d 1665, 1665 [4th Dept 2016], lv denied 32 NY3d 913 [2019]; Flynn v Sambuca Taxi, LLC, 123 AD3d 501, 501-502 [1st Dept 2014]; Connelly v City of Syracuse, 103 AD3d 1242, 1242 [4th Dept 2013]; cf. O'Banner v County of Sullivan, 16 AD3d 950, 951-952 [3d Dept 2005]).[FN5]

Nevertheless, defendant has failed to carry its burden to establish that DiRusso's conduct is subject to a recklessness standard of care as a matter of law. Defendant's submissions did not establish prima facie that DiRusso "engaged in specific conduct exempted from the rules of the road by [VTL] § 1104 (b)" (Reid v City of New York, 148 AD3d 739, 740 [2d Dept 2017]), and that claimants' injuries "result[ed] from the privileged operation of an emergency vehicle" instead of from non-privileged conduct which would be subject to an ordinary negligence standard—a critical distinction that defendant fails to recognize (Kabir, 16 NY3d at 230; see Benn v New York Presbyt. Hosp., 120 AD3d 453, 455-456 [2d Dept 2014]).
Defendant contends in a conclusory manner that, before the accident, DiRusso "park[ed] and exit[ed] his police vehicle while in the middle of I-84" and "mov[ed] his car laterally from the left side to the right shoulder" of the road, thus exercising privileges under VTL §§ 1104 (b) (1) and (4) (Affirm in Supp of Mot, ¶ 31). However, defendant has not identified which specific provision or provisions of the VTL, if any, DiRusso violated that would have necessitated reliance on one of those privileges. To the contrary, none of DiRusso's actions appear to have violated the relevant stopping, parking, and movement provisions. To the extent DiRusso initially stopped behind Smith in the left lane, such conduct appears to have been permissible [*5]given the emergency situation created by Smith's conduct (see VTL § 1202 [a] [1] [j]). Moreover, if, as claimants contend, the accident was partially caused by DiRusso parking his vehicle on the right shoulder, such conduct also appears to have been permissible without exercising a privilege (see id.; see also VTL § 1131 [noting that the general prohibition against driving on the shoulder should not be understood to prohibit vehicles from stopping, standing, or parking on the shoulder when authorized by law]). Defendant has also not demonstrated that DiRusso's lateral movement from the left lane toward the right shoulder violated the Vehicle and Traffic Law (see VTL § 1128 [a] [permitting movement between lanes so long as the driver has ascertained that such movement is safe]). Given defendant's conclusory arguments on the threshold question of whether DiRusso exercised a privilege, however, the Court declines to perform an exhaustive review of the entirety of the VTL and speculate as to which of its provisions could possibly have been applicable to DiRusso's conduct in operating his vehicle under the circumstances.[FN6]
 Defendant has thus not established as a matter of law that it is entitled to a reckless disregard standard of care by which to evaluate any of DiRusso's conduct, and the question whether DiRusso engaged in any privileged actions remains to be resolved at trial (see Oddo v City of Buffalo, 159 AD3d 1519, 1521 [4th Dept 2018]).
Beyond the question of whether any privileged conduct exists and the appropriate standard of care to be applied, defendant further fails to establish, prima facie, that, under either standard, DiRusso "was not at fault in the happening of the accident" (Reid, 148 AD3d at 740). Defendant's own submissions containing the contradictory deposition testimony of DiRusso and Smith establish the existence of several triable questions of fact relevant to the determination of liability under either a reckless disregard standard or principles of ordinary negligence (see Omrami v Socrates, 227 AD2d 459, 459-460 [2d Dept 1996] [holding that conflicting statements in the record present an issue of witness credibility which cannot be resolved on a motion for summary judgment]; Butzer v Scharf, 263 AD2d 862, 863 [3d Dept 1999] [same]). First, with respect to reckless disregard specifically, DiRusso testified that he knew that when a motorist sees an emergency vehicle with its lights activated on the right side of the road, the "proper procedure" is for that motorist to move over to the left lane (Affirm in Supp of Mot, Exh D, at 30; see VTL § 1144-a [a]). Taking into account this testimony and Smith's testimony, there is a question of fact as to whether DiRusso intentionally moved from what was possibly a relatively safer position behind Smith's vehicle on the left-hand side of the roadway, and parked his vehicle in the right shoulder with his lights activated—even though there was a risk that motorists would move their vehicles over to the left upon seeing his lights and collide with Smith's vehicle. Moreover, with respect to both recklessness and ordinary negligence, defendant's submissions are replete with issues of fact that may bear on the reasonableness of DiRusso's conduct under the circumstances, including whether: Smith was stopped in the left lane or left shoulder; the weather and road conditions were rainy and wet, or dry; DiRusso stayed behind Smith's car or [*6]went ahead of her to the right on his own when attempting to get her away from the left side of the highway; DiRusso determined that Smith was not impaired before asking her to move her vehicle; DiRusso used his handheld flashlight in a manner that created a blinding condition; and Smith ever moved into the right lane, either partially or fully, before the accident occurred. Because defendant failed to meet its prima facie burden, "we need not consider the sufficiency of the opposing papers" (Reid, 148 AD3d at 740; see Vega, 18 NY3d at 503).
Turning to defendant's alternative ground for dismissal, defendant argues that DiRusso's actions cannot form the basis of liability against the State because he was carrying out a discretionary governmental function. Governmental function immunity "shields public entities from liability for discretionary actions taken during the performance of governmental functions" (Valdez v City of New York, 18 NY3d 69, 76 [2011]; see Ferreira v City of Binghamton, 38 NY3d 298, 311-312 [2022]; McLean v City of New York, 12 NY3d 194, 202 [2009]). Generally, discretionary acts "involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (Tango v Tulevech, 61 NY2d 34, 41 [1983]; see also Valdez, 18 NY3d at 79). Ministerial actions may form the basis of liability, but only if they violate a special duty owed to the claimant (see Ferreira, 38 NY3d at 312, citing Valdez, 18 NY3d at 76-77 and McLean, 12 NY3d at 203). A special duty may arise if: "'(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the [government entity] took positive control of a known and dangerous safety condition'" (Ferreira 38 NY3d at 310, quoting Applewhite v Accuhealth, Inc., 21 NY3d 420, 426 [2013]). Claimants bear the burden to "prove the existence of a special duty as an element of [their] negligence cause of action" and, as such, the claim "must allege facts and circumstances from which the existence of a special duty could reasonably be inferred" (Canberg v County of Nassau, 214 AD3d 943, 945-946 [2d Dept 2023] [internal quotation marks omitted]; see Ferreira, 38 NY3d at 310).
Defendant specifically argues that traffic control, including patrol and traffic stops, are classic government functions—a proposition with which claimants agree (Claimants' Mem of Law in Opp to Mot, ¶ 35).[FN7]
Defendant further argues that such functions are inherently discretionary and that, here, DiRusso in fact exercised his discretion in initially stopping Smith, as well as throughout the entirety of the rapidly unfolding situation. Even assuming a ministerial duty existed, defendant additionally asserts that claimants' failure sufficiently to plead that the State owed them a special duty precludes a finding of liability and that there are no facts supporting the creation of a special duty in any event. Claimants present a threshold argument that governmental immunity does not apply where a government actor's conduct is to be evaluated under the higher standard of recklessness. Alternatively, claimants contend that, if [*7]assertion of an immunity defense may be maintained, DiRusso's acts were at least partially ministerial in that they allegedly violated numerous state police procedures and, further, that the second and third types of special duty are applicable under the circumstances.
The Court agrees with claimants that, to the extent defendant asserts that a governmental immunity defense may be raised where a government actor's conduct is governed by the recklessness standard of VTL § 1104 (e), such a position is inherently "illogical" (Claimants' Mem of Law in Opp to Mot, ¶ 32). It is also contrary to binding appellate precedent. Both the First and Second Departments have held that governmental function immunity does not apply where an emergency vehicle driver's reckless exercise of a privilege under VTL § 1104 is alleged to have caused injury (see Foster v Suffolk County Police Dept., 137 AD3d 855, 857 [2d Dept 2016] [rejecting the municipal defendants' argument "that they are entitled to immunity outside of the qualified immunity granted by [VTL] § 1104"]; Santana v City of New York, 169 AD3d 578, 578 [1st Dept 2019]). As has been aptly explained, application of the governmental immunity defense "would be incongruous" in such circumstances because:
such a ruling would sanction a police officer to make a discretionary decision to disregard an obvious risk with conscious disregard for the outcome, and to otherwise engage in reckless conduct. . . . [T]his would, in effect, defeat any imposition of civil liability, as otherwise authorized by the [VTL], in the narrow range of cases where a police officer engages in actions[ ] which meet the high standard of reckless conduct.
(Smelts v Meloni, 5 Misc 3d 773, 779 [Sup Ct, Monroe County 2004]). Given that the very purpose of VTL § 1104 (e) is to remove privileged conduct from scrutiny under ordinary negligence principles, it would also be illogical to require claimant to prove a special duty where there is an alleged reckless exercise of a privilege under VTL § 1104 (b).
Thus, to the extent it is alleged and may be demonstrated at trial that DiRusso's reckless exercise of a privilege caused the accident, neither the affirmative defense of governmental immunity nor the special duty requirement is relevant. Such issues may be relevant, however, if it is determined that some or all of DiRusso's conduct is subject to an ordinary negligence standard of care. But given the threshold question of material fact as to whether Trooper DiRusso was engaged in any privileged conduct at the time of the accident and the moments leading up thereto, and the resulting uncertainty as to the appropriate standard of care to be applied to his various actions in this case, any determination as to the issues of governmental immunity and the adequate pleading or existence of any special duty would be premature at this juncture. Accordingly, it is hereby
ORDERED that defendant's motion for summary judgment (M-98443) is DENIED. The Court will schedule a conference to be held as soon as practicable at which a trial date will be selected.
December 31, 2023
Albany, New York
ZAINAB A. CHAUDHRY
Judge of the Court of Claims
Papers Considered:
1. Claim, filed December 27, 2019;
2. Answer, filed February 7, 2020;
3. Notice of Motion;
4. Affirmation of Assistant Attorney General Terrance K. DeRosa in Support of Motion, with Exhibits A-G;
5. Affirmation of Matthew F. Rice, Esq., in Opposition to Motion, with Exhibits 1-17;
6. Additional Affirmation of Matthew F. Rice, Esq., denominated "Plaintiffs' Statement of Procedural History and Material Facts";
7. Additional Affirmation of Matthew F. Rice, Esq., denominated "Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment"; and
8. Reply Affirmation of Assistant Attorney General Terrance K. DeRosa in Further Support of Motion.

Footnotes

Footnote 1:The claim also names the New York State Police as a defendant. As claimant acknowledges, the State Police is not a proper defendant in the Court of Claims. The caption has been amended to reflect the only properly named defendant, the State of New York.

Footnote 2:Defendant asserted the affirmative defense of governmental function immunity in its answer.

Footnote 3:See Alfin v Smith, Rockland County Supreme Court Index No. 030962/2020.

Footnote 4:A copy of the ticket that was issued is included as part of a packet of State Police records contained in defendant's submissions (see Affirm in Supp of Mot, Exh C, at 21-23). However, the Court has not relied on any documents contained in Exhibit C because the records are uncertified and, thus, not in admissible form (see Pena v KST Trucking, Inc., 206 AD3d 1007, 1008 [2d Dept 2022]; Yassin v Blackman, 188 AD3d 62, 65-67 [2d Dept 2020]).

Footnote 5:Claimants' reliance on Quintero v City of New York for the proposition that "investigat[ing] a suspect" is not an emergency operation is unavailing (113 AD3d 414, 415 [1st Dept 2014]). The police officers in Quintero were alleged to have double-parked their vehicle for 15-20 minutes before the accident in that case in order to "observe" two suspects (id.). Here, in contrast, DiRusso was not merely investigating and observing Smith—instead, the record shows he was actively "pursuing" her for perceived traffic violations and attempting to get her off the road safely (VTL § 114-b).

Footnote 6:Curiously, although claimants appear generally to recognize that the threshold question presented in determining the applicability of VTL § 1104 is whether DiRusso's conduct falls within the privileges listed in section 1104 (b), they seem to assume that his actions in stopping, parking, and moving his vehicle are encompassed within the statutory privileges, and argue only that his other actions in illuminating his patrol lights, speaking loudly to Smith, and using his flashlight are not (Claimants' Mem of Law, ¶¶ 9-11).

Footnote 7:Typically, the threshold question to be answered is whether the defendant engaged in governmental or proprietary conduct (see Applewhite v Accuhealth, Inc., 21 NY3d at 425). When the government engages in proprietary conduct, ordinary negligence principles apply and, unlike in cases involving governmental conduct, there is no need to consider the issues of governmental immunity or special duty (see id.). It is well established that policing is governmental conduct (see Howell v City of New York, 39 NY3d 1006, 1008 [2022]).